IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SALLY W. TARQUINIO<br>524 Saltworks Ct.<br>Annapolis, Maryland 21401<br><br>    Plaintiff<br><br>v.<br><br><br>JOHNS HOPKINS UNIVERSITY<br>APPLIED PHYSICS LAB<br>11100 Johns Hopkins Rd.<br>Laurel, Maryland 20723<br><br>    Defendants | CIVIL ACTION NO: 1:23-cv-00727-RDB<br><br><br>JURY TRIAL DEMAND |

**AMENDED COMPLAINT**

Plaintiff, Sally W. Tarquinio sues the Defendant pursuant to the Americans with Disabilities Act, 42 U.S.C. 12116, et. seq., and for her cause of actions states:

THE PARTIES

1.   Plaintiff, Sally Tarquinio (hereinafter "Tarquinio" or Plaintiff) is an adult resident of Anne Arundel County, Maryland, and a citizen of the United States.

2.   Defendant Johns Hopkins University Applied Physics Lab (hereinafter "APL" or Defendant APL) is a subsidiary or agent of Johns Hopkins University that conducts research and

1

development on behalf of, and in a contract capacity with, the United States government and the Department of Defense.

## JURSIDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to Title I of the Americans with Disabilities Act as amended from time to time, and 42 USC §12116.

## VENUE

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b). Defendant is a Maryland business located within this jurisdiction. Substantially all events or omissions giving rise to this claim occurred in this jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to brining this suit, Plaintiff caused to be filed with the Baltimore office of the EEOC a timely claim alleging disability discrimination and violations of Americans with Disabilities Act, 42 U.S.C. 12116, et. seq. That claim was reviewed and a Notice of Right to Sue was issued on December 16th, 2022.

## STATEMENT OF FACTS

6. Between September 2005 and her employment termination on September 7, 2021, the defendant employed plaintiff as an engineer at its Applied Physics Lab ("APL") in Laurel, Maryland and on a program unrelated to the medical field.

7.      Plaintiff in 2004 and again in 2012 had been diagnosed with, and treated for, Lyme Disease. Subsequently, Plaintiff suffered from "Chronic Lyme" disease, a/k/a as "post-treatment Lyme disease" (PTLD), "post-treatment Lyme disease syndrome" (PTLDS), or "long Lyme." During the relevant period, Plaintiff continued to experience the effects of the disease and was consistently treating with physicians to mitigate and to manage those effects.

8.      After its appearance in 1983, timely antibiotic treatment has since been determined to be an effective treatment for active cases of Lyme disease. Antibiotics are very effective if administered early after contraction of the pathogen (usually through the bite of an infected tick). Administered in time, the antibiotics are calculated to kill the pathogen in its entirety and nearly 80% of patients appear to fully recover with no lasting effects.  However, in 15-20% of cases, even those patients who timely began antibiotic treatment experience Lyme symptoms after successfully completing treatment (i.e., with the pathogen seemingly eradicated in the blood stream). What is sometimes called "Chronic Lyme," is a condition of persisting symptomology long after antibiotic treatment and where there is no positive test for the pathogen.

9.      A recent Harvard University article explains chronic Lyme as follows:

"of the "various terms for persistent [Lyme] symptoms, such as post-treatment Lyme disease (PTLD), post-treatment Lyme disease syndrome (PTLDS), long Lyme, or chronic Lyme. PTLD is a research term used to define the 10% to 20% of people who continue to experience symptoms after completing antibiotic treatment for Lyme disease. Those people meet the following criteria: a prior documented episode of Lyme disease meeting CDC criteria in which all objective signs resolve..."

10. Harvard Medical continues, discussing immune system deregulation and "autoimmune issues:"

"Regardless of terminology, persistent symptoms of Lyme disease are real and well documented. However, the cause (or causes) are poorly understood. Current theories include… Immune system dysregulation: The body's response to fighting infection runs amok and persists long after it is helpful. This may be due to lingering spirochete (Lyme bacteria) proteins, persistent inflammation, or other autoimmune issues…"

11. At all relevant times, and although Plaintiff suffered from the effects of long Lyme, she was otherwise capable of fulfilling the essential functions of her position and had been doing so before and during the COVID pandemic. She could continue to perform the essential functions of the position with reasonable accommodation such as regular COVID testing, physical distancing, etc. [Anticipated Testimony/Sworn Statements].

12. Between the onset of the COVID-19 pandemic in or around April, 2020 and until the experimental COVID vaccines were authorized by the FDA for emergency use (around November, 2021) JHU/APL staffed its physical work facilities with employees who worked in those facilities alongside others and while observing "COVID protocols" such as masking, physical distancing, testing, self-reporting and temperature taking, increased sanitation procedures, and making available sanitizing materials for its.  To information and belief, other employees were allowed remote work opportunities.

13. On September 24th, 2021, Defendant APL announced a policy that "followed the guidance set by President Biden and the U.S. government's initiative to combat the spread of COVID-19." According to this policy, all APL staff, including Plaintiff, were required to provide

proof of at least the first dose of one of the experimental COVID-19 vaccines then approved by the Federal Drug Administration pursuant to its Emergency Use Authorization. Each employee was required to provide this proof by October 15, 2021 or, alternatively, to submit a request for a medical or religious accommodation to the Defendant's APL Accommodations Coordinator and pursuant to respective federal equal opportunity laws

14. Although Plaintiff at the time of this requirement had no active Lyme pathogen in her bloodstream, she continued to suffer from the effects associated with chronic Lyme. In consideration of her treating physician's recommendations specifically relating to her ongoing treatment for that condition, the Plaintiff submitted to Defendant's representatives on October 1, 2021, a Request for Medical Accommodation. Plaintiff indicated on the request that she was seeking an exemption to APL's vaccination requirement, as well as "Covid testing" in lieu of the vaccination (testing for COVID was available free of charge through JHU/APL's health care provider, Signa Allegiance). On her request for accommodation, Plaintiff clearly noted her disability as "Immune dysregulation" and "excessive immune activation from the years of chronic Lyme Disease." Plaintiff submitted with her medical accommodation request, an APL generated form requesting an exemption from the Covid-19 vaccination requirement. This form was signed by Plaintiff's medical provider, Dr. Mark Schwartz, who specifically identified Plaintiff's disability as "chronic Lyme Induced Immune Dysregulation."

15. After acknowledging receipt of Plaintiff's accommodation request and request for exemption, the JHU/APL employees who were handling the matter asked Plaintiff to submit another APL form, to wit: "Request for Personal Medical Records." According to instructions on the accommodation request form, the records request form was required "to provide written

authorization for the Laboratory's Medical Office to contact your physician(s)." The same employees notified Plaintiff that the form would "enable APL's Medical Officer can consult with your medical provider on any necessary follow up." [sic] Plaintiff declined to sign the requested medical release.

16. At no time did APL's designated employees consider ways to reasonably and safely accommodate Plaintiff Tarquinio's immune dysregulation disability that was preventing her from being vaccinated with the experimental vaccine. No APL employee reached out to her to query how APL may reasonably and safely accommodate her employment since her disability, as explicitly stated by her treating physician, precluded her from receiving the experimental mRNA vaccines. Defendant took no actual steps in the interactive process following receipt of Plaintiff's request for accommodation and the request for exemption to the COVID vaccine except asking her 'for more information' why she couldn't receive the vaccination and requiring her to authorize them to speak with her treating doctor(s). Defendant did not consider whether it could reasonably accommodate Plaintiff's disability by, for example, having her maintain the protocols under which its employees had apparently safely worked together for more than a year prior to FDA emergency use authorization and the Defendant's vaccination mandate, and whether this would create an undue hardship Defendant.

17. Instead, APL employees attempted to second guess Plaintiff's medical provider's recommendation to avoid the experimental vaccination due to her immune system dysregulation. On October 14, 2021, Defendant's employees considered, not immune system dysregulation, but an active Lyme pathogen diagnosis, to wit:

6

"Lyme disease is not a medical contraindication to receiving the Covid vaccine…" and indicated that they

"believe[d] there is insufficient justification in this documentation to accept this request…" and asking "…why [Plaintiff's] Lyme diagnosis would preclude her from being vaccinated..."

18. On November 15, 2021, APL noted that "[Plaintiff] has not provided a signed medical release form…."

19. On November 30th Defendant APL's coordinator determined that "Lyme disease is not a medical contraindication to receiving the COVID-19 vaccine," and denied the Plaintiff's medical request for accommodation. She was given until December 7, 2021, to get the first dose of one of the then-available COVID-19 vaccines and was also advised that she could submit further evidence prior to December 7th.

20. On December 6th, 2021, APL notified Plaintiff that:

"This morning, we carefully reviewed and consulted with APL's Medical Officer on the additional medical information you supplied late last week. Because the basis of your determination does not turn on whether you have established the underlying diagnosis below but, rather, whether you have established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC guidelines, the additional information does not change the determination you received last week."

21. Plaintiff's employment was subsequently terminated after JHU/APL determined that active Lyme disease does not warrant an exemption to the experimental vaccination requirement.

7

22. Tarquinio suffered economic and other compensatory damages as a direct and proximate cause.

## COUNT ONE

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AMENDMENTS FAILURE TO ACCOMMODATE

42 U.S.C. 12116, et. seq.

23. Plaintiff adopts and includes all previous averments into this Count. Plaintiff is an individual who has a disability within the meaning of the Americans with Disabilities Act as Amended ("ADAAA") and which specifically expands the definition of "disability" to include those conditions that limit a person's "functions of the immune system." Defendant APL is an employer that is covered by the ADAAA. Defendant was on notice of the employee's disability beginning on the date that she filed her request for accommodation and her request for exemption signed by her medical doctor who was treating her for Immune Dysregulation. At the time of her request for accommodation, and at all relevant times, Plaintiff could perform the essential functions of her position and could have continued to do so with reasonable accommodation by the Defendant who had allowed her to work in close proximity to other employees and to its profit for more than one and a half years prior to Defendant's vaccination requirement. Defendant APL could have reasonably, without undue burden, and without danger to others, granted the Plaintiff's request for accommodation as recommended by her treating physician. However, Defendant refused to consider any accommodations that were available, including continued following of

established and enhanced Covid protocols adopted prior to emergency authorization of the experimental Covid vaccines, including remote work. Defendant failed to follow ADAAA procedures throughout the course of the underlying events. Finally, Defendant did not consider her clearly stated disability – immune dysregulation – but focused instead on whether a positive diagnosis of the Lyme pathogen (indicating active Lyme disease) established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC.

24. The Defendant violated Plaintiff's rights under the ADA by failing to abide by each of its statutory obligations in the course of determining Plaintiff's request for accommodation and exemption from the COVID-19 vaccine.

25. She has suffered loss of income, loss of career, and humiliation by the Defendants' unlawful conduct.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Compensatory damages in the amount of $500,000; and

B. Punitive Damages as determined by a jury; and

C. Nominal Damages as determined by a jury; and

D. Attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988; and

E. Any other further relief as the Court deems just and appropriate.

## COUNT TWO

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AMENDMENTS

## EMPLOYMENT DISCRIMINATION

42 U.S.C. 12112, et. seq.

26. Plaintiff adopts and includes all previous averments into this Count. Plaintiff is an individual who has a disability within the meaning of the Americans with Disabilities Act as Amended ("ADAAA") and which specifically expands the definition of "disability" to include those conditions that limit a person's "functions of the immune system." Defendant APL is an employer that is covered by the ADAAA. Defendant was on notice of the employee's disability beginning on the date that she filed her request for accommodation and her request for exemption signed by her medical doctor who was treating her for Immune Dysregulation. At the time of her request for accommodation, and at all relevant times, Plaintiff could perform the essential functions of her position and could have continued to do so with reasonable accommodation by the Defendant who had allowed her to work in close proximity to other employees and to its profit for more than one and a half years prior to Defendant's vaccination requirement. Defendant APL could have reasonably, without undue burden, and without danger to others, granted the Plaintiff's request for accommodation as recommended by her treating physician. However, Defendant refused to consider any accommodations that were available, including continued following of established and enhanced Covid protocols adopted prior to emergency authorization of the experimental Covid vaccines, including remote work. Defendant deliberately chose to ignore its procedural obligations throughout the course of the underlying events. Defendant's denial was based on its need to provide accommodation for Plaintiff's physical impairment, which it failed to consider even though clearly stated as immune dysregulation and not active Lyme diagnosis. Defendant did not consider her clearly stated disability – immune dysregulation – but focused instead on whether a positive diagnosis of the Lyme pathogen (indicating active Lyme disease) established a condition that is contraindicated for receiving the COVID-19 vaccination according

to CDC. By considering this condition, Defendant reached its desired conclusion that Plaintiff must get the experimental vaccination or lose her employment.

27. The Defendant violated Plaintiff's rights under the ADAAA by deliberately failing to abide by each of its statutory obligations in the course of determining Plaintiff's request for accommodation and exemption from the COVID-19 vaccine.

28. She has suffered loss of income, loss of career, and humiliation by the Defendants' unlawful conduct.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Compensatory damages in the amount of $500,000; and

B. Punitive Damages as determined by a jury; and

C. Nominal Damages as determined by a jury; and

D. Attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988; and

E. Any other further relief as the Court deems just and appropriate.

**COUNT THREE**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AMENDMENTS**

**PROHIBITED EXAMINATION AND INQUIRY**

42 U.S.C. 12112, et. seq.

29. Plaintiff adopts and includes all previous averments into this Count. Plaintiff is an individual covered by the provisions of the Americans with Disabilities Act as Amended ("ADAAA"). Conversely, Defendant APL is a covered employer. The ADAAA specifically prohibits an employer from requiring a medical examination and from making inquiries as to the

nature or severity of an employee's known disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity. Acceptable inquiries include, inter alia, inquiries into the ability of an employee to perform job-related functions.

30. Defendant was on notice of Plaintiff's covered disability when it received her request for accommodation and separate request for exemption to the experimental Covid vaccine requirement that was signed by the medical doctor treating her for "chronic Lyme induced immune dysregulation." At that time, Plaintiff could perform the essential duties of her position and all job related functions required of her, but for her inability to safely receive the Covid vaccine due to her immune system disability.

31. Rather than follow ADAAA procedures by making a determination whether it could reasonably and safely accommodate her request without undue burden, Defendant's efforts included only attempts to determine whether a positive diagnosis of the Lyme pathogen (indicating active Lyme disease) established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC, and without focusing on the underlying and clearly stated disability.

32. Plaintiff has suffered loss of income, loss of career, and humiliation by the Defendants' unlawful conduct.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Compensatory damages in the amount of $500,000; and

B. Punitive Damages as determined by a jury; and

C. Nominal Damages as determined by a jury; and

D. Attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988; and

      E.      Any other further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

8/23/2023

*Marc Schifanelli*

Marc D. Schifanelli
Bar No.: 27753
P.O. Box 1023
Stevensville, Maryland 21666
240-882-2402