**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| SALLY W. TARQUINIO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:23-CV-00727-RDB |
| | ) |
| JOHNS HOPKINS UNIVERSITY | ) |
| APPLIED PHYSICS LAB | ) |
| | ) |
| Defendant. | ) |

_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT JOHNS HOPKINS UNIVERSITY**
**APPLIED PHYSICS LAB'S MOTION FOR SUMMARY JUDGMENT**

Defendant Johns Hopkins University Applied Physics Lab ("APL") submits this memorandum in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 105. For the reasons discussed below, APL respectfully moves for this Court to grant judgment in APL's favor on all counts in Plaintiff Sally Tarquinio's ("Plaintiff") Amended Complaint.

Dated: January 11, 2024          Respectfully submitted,

**JACKSON LEWIS P.C.**

By:      /s/ *Jeremy S. Schneider*
Jeremy S. Schneider (MD Bar No. 14104)
Jason A. Ross (MD Bar No. 30423)
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Fax: (703) 483-8301
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com

***Counsel for Defendant Johns Hopkins University***
***Applied Physics Laboratory LLC***

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 2

STANDARD OF REVIEW ................................................................................. 18

ARGUMENT ..................................................................................................... 19

I.   APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I
     FOR FAILURE TO ACCOMMODATE BECAUSE PLAINTIFF BROKE
     DOWN THE INTERACTIVE PROCESS................................................. 19

     A. Plaintiff's Refusal to Sign the Medical Release Form Broke
        Down the Interactive Process, a Total Bar to Recovery......................... 19

        1.  APL's Request for More Medical Information Was Permissible
            Under the ADA and a Necessary Part of the Interactive Process. ................ 21

        2.  Plaintiff Caused the Breakdown in the Interactive
            Process By Refusing to Sign the Medical Release Form ................................ 22

     B. Plaintiff's Refusal to Engage in the Interactive Process
        Prevented the Exploration of Reasonable Accommodations Other
        than the One She Sought. .......................................................................... 25

II.  APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR
     DISCRIMINATION BECAUSE IT DID NOT DISCRIMINATE AGAINST
     PLAINTIFF BECAUSE OF HER ALLEGED DISABILITY.................................... 27

III. APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III
     ALLEGING "PROHIBITED EXAMINATION AND INQUIRY"
     UNDER THE ADA BECAUSE APL'S INQUIRIES WERE
     JOB-RELATED AND NECESSARY. ...................................................... 28

CONCLUSION ................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Mass. Gen Bringham, Inc.*,
2023 U.S. Dist. LEXIS 174606 (D. Mass. Sept. 28, 2023) ...............................................27, 28

*Ali v. McCarthy*,
179 F. Supp. 3d 54 (D.D.C. 2016) .........................................................................................22

*Allen v. City of Raleigh*,
140 F. Supp. 3d 470 (E.D.N.C. 2015)....................................................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...............................................................................................................18

*Berkner v. Blank*,
2013 U.S. Dist. LEXIS 34320 (D. Md. Mar. 11, 2013)...............................................20, 22, 23

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986) ....................................................................................18

*Coffey v. Norfolk S. Ry. Co.*,
2021 U.S. Dist. LEXIS 46473 (E.D. Va. Feb. 5, 2021).....................................................29, 30

*Coffey v. Norfolk S. Ry. Co.*,
23 F.4th 332 (4th Cir. 2022) .............................................................................................21, 29

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*,
423 F. App'x 314 (4th Cir. 2011) ..........................................................................................20

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) .................................................................................................18

*Felty v. Graves-Humphreys Co.*,
818 F.2d 1126 (4th Cir. 1987) ...............................................................................................18

*Frye v. ACR*,
2020 U.S. Dist. LEXIS 269603 (E.D. Va. March 11, 2022) (*aff'd by Frye v.
ACR*, 2022 U.S. App. LEXIS 2937) (4th Cir. Feb. 1, 2022) ...................................................29

*Giberson v. Fleet Fin.*,
1997 U.S. App. LEXIS 4064 (4th Cir. Mar. 7, 1997)..............................................................28

*Haneke v. Mid-Atl. Capital Mgmt.*,
131 F. App'x 399 (4th Cir. 2005) ...........................................................................................19

*Harvey v. Jai Med. Ctr.*,
   2021 U.S. Dist. LEXIS 192008 (D. Md. Oct. 5, 2021)..........................................................27

*Jorgenson v. Conduent Transp. Solutions, Inc.*,
   2023 U.S. Dist. LEXIS 18463 (D. Md. Feb. 2, 2023) (*affirmed by Jorgenson
   v. Conduent Transp. Sols., Inc.*, 2023 U.S. App. LEXIS 15542 (4th Cir., June
   21, 2023) .........................................................................................................................27

*Lacasse v. Didlake, Inc.*,
   712 Fed. Appx. 231 (4th Cir. 2018).................................................................................27

*Leonard v. Electro-Mechanical Corp.*,
   36 F. Supp. 3d 679 (W.D. Va. 2014) ...............................................................................29

*Perdue v. Sanofi-Aventis U.S., LLC*,
   999 F.3d 954 (4th Cir. 2021) ...........................................................................................19

*Perkins v. Int'l Paper Co.*,
   936 F.3d 196 (4th Cir. 2019) ...........................................................................................18

*Rowlett v. Balt. City Police Dep't*,
   2023 U.S. Dist. LEXIS 53911 (D. Md. Mar. 28, 2023)..............................................20, 21

*Scott v. Montgomery County Gov't*,
   164 F. Supp. 2d 502 (D. Md. 2001) ............................................................................19, 25

*Stewart v. Ross*,
   2020 U.S. Dist. LEXIS 68223 (E.D. Va. Apr. 17, 2020)..................................................20

*Turcotte v. Comcast Cable Communs. Mgmt.*,
   LLC, 2019 U.S. Dist. LEXIS 24018 (D. New Hamp. Feb. 14, 2019) ................................22

*Wedderburn v. Bd. of Educ.*,
   2022 U.S. Dist. LEXIS 29628 (D. Md. Feb. 18, 2022) ....................................................25

*Williams v. Md. Dep't of Health*,
   2021 U.S. Dist. LEXIS 244893 (D. Md. Dec. 22, 2021)...................................................20

*Williams v. Rodriguez*,
   No. 3:20-cv-806 (VLB), 2021 U.S. Dist. LEXIS 96443 (D. Conn. May 21,
   2021) ................................................................................................................................17

*Wilson v. Dollar General Corp.*,
   717 F.3d 337 (4th Cir. 2013) ...........................................................................................20

*Works v. Colvin*,
   519 Fed. Appx. 176 (4th Cir. 2013)..................................................................................22

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* .................................................. *passim*

**Other Authorities**

29 C.F.R. § 1630, *et seq.* ................................................................................................19

Fed. R. Civ. P. 56(a) ...................................................................................................18

Fed. R. Evid. 201 .......................................................................................................17

## INTRODUCTION

This is an employment discrimination case. Plaintiff alleges APL discriminated against her because of her disability. The undisputed evidence establishes that APL did no such thing.

In response to the COVID-19 pandemic, APL instituted a lawful policy requiring its employees to be vaccinated against COVID-19. Employees, however, could request a reasonable disability or religious-based accommodation. Dozens of APL employees did just that. In some cases, those requests were granted; in others they were denied. In many cases, APL requested additional information from the employee or their medical providers so it could perform an individualized assessment of each request, as permitted and required by law.

The undisputed record evidence establishes that Plaintiff did not engage in the interactive process with APL. Rather than work with APL to evaluate her request and consider how she could be accommodated, Plaintiff repeatedly refused to provide current medical documentation and similarly refused to authorize APL to communicate with her medical providers. Plaintiff also wrongfully believed that APL was obligated to simply grant her requested accommodation – a blanket exemption from the policy – without providing any current medical information or otherwise engaging in the interactive process.

It is undisputed that Plaintiff submitted medical records that were more than nine years old and did not concern vaccinations of any kind, let alone the COVID-19 vaccines. The undisputed record evidence also shows that APL repeatedly requested current medical information that would show Plaintiff's condition was contraindicated for the vaccine and repeatedly asked her to sign the medical authorization form allowing APL's Medical Director to contact her providers. Plaintiff refused. APL's Medical Director wanted to speak to Plaintiff's providers to understand their medical opinions on her receiving the vaccine, and Plaintiff's providers uniformly testified they

1

would have willingly spoken to APL if Plaintiff authorized it. Plaintiff refused.

Because Plaintiff refused to provide any current medical information, APL ultimately denied Plaintiff's accommodation request. Despite her failure, and despite the original date for compliance with the vaccination policy being October 15, 2021, APL did not terminate Plaintiff's employment until December 7, 2021. During that time, APL gave Plaintiff multiple opportunities to provide current medical information in support of her accommodation request or authorize its Medical Director to speak with her providers. Plaintiff again refused.

Plaintiff now brings three causes of action against APL under the Americans with Disabilities Act ("ADA"). In Count I, she alleges APL failed to accommodate her disability. But Plaintiff refused to engage in the interactive process. Her refusal to allow APL and her doctors to speak and refusal to provide current medical documentation supporting her request broke down the interactive process. She admits this, even alleging it in her own Amended Complaint.

In Count II, Plaintiff alleges APL discriminated against her by terminating her employment because of her disability. However, Plaintiff admits APL terminated her employment for refusing to comply with the vaccination policy—a legitimate and non-discriminatory reason.

In Count III, Plaintiff alleges APL engaged in an impermissible medical inquiry under the ADA. But Plaintiff admits APL's inquiries were job-related and necessary to evaluating her reasonable accommodation request.

There is no dispute of material fact, and APL is entitled to judgment as a matter of law on all counts.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### Plaintiff's Employment with APL

1.      APL hired Plaintiff as a Systems Engineer in 2005. [Excerpts from Deposition of Sally Tarquinio, referred to as "Pl. Dep." at 13:19-22, attached as **Exhibit A**].

**APL Institutes a Vaccination and Return to Work Policy**

2.      On September 14, 2021, APL Director Ralph Semmel announced APL's COVID-19 vaccination requirement as a condition of employment for all APL staff (hereinafter the "Vaccination Policy"). [Ex. 21 to Pl. Dep. (September 14, 2021 email from Ralph Semmel titled "Change to Vaccination Policy")].

3.      "The policy applied to everyone at the lab." [Pl. Dep. 25:12-14; Ex. 21 to Pl. Dep.].

4.      According to the Vaccination Policy, all APL staff needed to submit proof of at least the first dose of an approved vaccination sequence by October 15, 2021. [Ex. 21 to Pl. Dep.].

5.      The only exceptions to the Vaccination Policy were for approved medical or religious accommodations granted by APL's Accommodations Coordinator. [Ex. 21 to Pl. Dep.].

6.      Those seeking a religious or medical accommodation were requested to submit their requests to the Accommodations Coordinator by October 1, 2021. [Ex. 21 to Pl. Dep.].

7.      If an employee did not comply with the Vaccination Policy by receiving the first dose of an approved vaccination or have an approved accommodation, their employment was to end on October 15, 2021. [Ex. 21 to Pl. Dep.].

8.      Because APL's Accommodations Coordinator needed time to evaluate each request case-by-case and to engage in the interactive process, all staff who submitted timely requests were granted temporary accommodations while their requests were pending. [Declaration of Shawn McGruder ("McGruder Decl.") at ¶ 5, attached as **Exhibit B**].

9.      Employees whose accommodation denials were issued after October 15, 2021 were given a period of one week after the issuance of the determination to either submit proof of vaccination, resign, or have their employment terminated. [Ex. 6 to Pl. Dep. (October 11, 2021 Email from Deputy Accommodations Coordinator to Plaintiff)].

10.     Plaintiff admitted the Vaccination Policy was one of "many workplace policies that

applies to all employees" and "questions about those policies, [] would be job-related questions." [Pl. Dep. 26:14-30:5].

### APL's Accommodations Team Followed its Normal Procedure for Evaluating Medical Requests for Accommodations from the Vaccination Policy.

11.    APL had an existing process for evaluating and responding to requests for medical accommodations or disability-based requests. [McGruder Decl. at ¶ 6].

12.    APL engaged in the interactive process, which involved an individualized review of each request to understand the accommodation sought, review of medical information from the employee's provider, follow-up communications with the requestor's provider, and discussions with the employee's group supervisor concerning their job duties. [McGruder Decl. at ¶ 7].

13.    When necessary, the Accommodations Team would also consult APL's Medical Office concerning medical issues identified in an individual's accommodation request and authoritative medical guidance on related risks of vaccination. [McGruder Decl. at ¶ 8].

14.    Medical questions from the Accommodations Coordinator were directed to Dr. Clarence Lam, APL's Medical Director for Occupational Health. [McGruder Decl. at ¶ 9].

15.    Shawn McGruder was APL's Accommodations Coordinator, and she had ultimate authority over the determination to grant or deny an accommodation request from the COVID-19 vaccination requirement. [McGruder Decl. at ¶ 3].

### Plaintiff Requests an Accommodation, a Blanket Exemption, from the Vaccination Policy

16.    On October 1, 2021, Plaintiff submitted an "Employee Request for Medical Accommodation" form to APL's Accommodations Coordinator. [Pl. Dep. 65:9-12; Ex. 2 to Pl. Dep. (Plaintiff's Request for Medical Accommodation)].

17.    Plaintiff submitted this Request Form "in response to the announcement of the vaccine policy to … request an accommodation." [Pl. Dep. 65:13-17].

18.     On the Request Form, Plaintiff identified her requested accommodation as "Exemption from COVID-19 vaccine requirement and COVID-19 testing." [Ex. 2 to Pl. Dep.].

19.     Plaintiff testified she sought an accommodation to avoid testing for COVID-19 "because she didn't think" COVID testing is "reasonable" and because she didn't think COVID testing "actually helped the situation." [Pl. Dep. 70:17-71:1; 73:2-6].

20.     The Request Form states, "in the event that the lab needs to obtain from you and/or your physician information regarding the condition for which you are seeking reasonable accommodation, you will be asked to supply such information and/or asked to provide a written authorization for the lab's medical office to contact your physician." [Ex. 2 to Pl. Dep.].

21.     Plaintiff testified she understood from this language APL could "come back and ask you some questions about the forms you were submitting." [Pl. Dep. 68:15-20].

22.     Plaintiff testified she understood from this language APL "may ask you to authorize the lab's medical office to contact your physician." [Pl. Dep. 69:3-8].

23.     On October 1, 2021, Plaintiff also submitted the Medical Verification for Exemption from COVID-19 Verification Requirement. [Ex. 2 to Pl. Dep.].

24.     The Verification Form asked that Plaintiff "check all that apply" for reasons she "should not be immunized for COVID." [Ex. 2 to Pl. Dep.].

25.     Plaintiff checked the box for "other" which asked her to "provide this information in a separative narrative that describes the reason in detail (these requests will be reviewed on a case-by-case basis)." [Ex. 2 to Pl. Dep.].

26.     Plaintiff did not provide a "separate narrative"; instead, she wrote only "Chronic Lyme Disease + Lyme Induced immune dysregulation." [Ex. 2 to Pl. Dep.].

27.     Plaintiff testified that Dr. Marc Schwartz signed the Verification Form as her Health

Provider. [Pl. Dep. 85:6-13].

28.     Dr. Schwartz does not recall discussing the Verification Form with Plaintiff, but testified he had no reason to doubt that that was his signature or that he signed it on September 29, 2021. [Excerpts from Deposition of Dr. Marc Schwartz at 27:20-28:4, attached as **Exhibit C**].

29.     Plaintiff testified she wrote, "Chronic Lyme Disease + Lyme Induced immune dysregulation" on the Verification Form because that is what Dr. Schwartz told her to write "verbatim" and "directly from [Dr. Schwartz's] mouth." [Pl. Dep. 115:10-20].

30.     Dr. Schwartz testified that was not accurate, stating he had no recollection of speaking with Plaintiff about this, and if he had been asked to characterize her condition, those would not have been the words he used. [Schwartz Dep. 28:20-32:7].

31.     Attached to the Verification Form, Plaintiff included the results of lab work from June 30, 2012 – more than nine years earlier – from the office of Dr. Mark Sivieri, which Plaintiff believed established that Plaintiff had Lyme's disease. [Ex. 3 to Pl. Dep.; Pl. Dep. 97:9-98:10].

32.     On October 1, 2021, APL acknowledged receipt of the accommodation request: "we will get back to you as soon as we have or need additional information." [Ex. 4 to Pl. Dep. (October 1, 2021 Email from Elizabeth Bunda-Lee to Plaintiff)].

**APL Requests More Information About Plaintiff's Accommodation Request**

33.     On October 11, 2021, APL's Deputy Accommodations Coordinator emailed Plaintiff, advising her "we are still missing the Request for Personal Medical Records" and provided a link to the form on APL's intranet. [Ex. 7 to Pl. Dep. (October 11, 2021 Email from Elizabeth Bunda-Lee to Plaintiff)].

34.     The October 11, 2021 email asked that Plaintiff sign the Medical Release Form, and states, "it will enable APL's medical officer to consult with your medical provider on any

necessary follow-up." [Ex. 7 to Pl. Dep; Pl. Dep. 119:19-120:8].

35.    If Plaintiff had signed the Medical Release Form, it would have enabled the Accommodations Office to obtain additional and current medical documentation in support of her request and it would have allowed Dr. Lam to speak with her medical providers to gather more information about her request for accommodation. [Ex. 7 to Pl. Dep; Excerpts from Deposition of Dr. Clarence Lam at 32:5-16, attached as **Exhibit D**].

36.    One of the purposes of gathering more information about the request for an accommodation related to the safety of APL's workplace and staff. [Excerpts from Deposition of Shawn McGruder at 19:22-21:16, attached as **Exhibit E**].

**Plaintiff Refuses to Sign the Medical Release Form,<br>Preventing APL From Speaking to her Medical Providers**

37.    "Plaintiff declined to sign the requested medical release." [ECF No. 21, Amended Complaint at ¶ 15].

38.    Plaintiff testified she refused to sign the Medical Release Form that would have allowed APL to speak to her medical providers. [Pl. Dep. 107:16-108:2].

39.    Plaintiff testified she understood she was "declin[ing] to allow them to speak with [her] medical provider." [Pl. Dep. 108:22-109:3].

40.    Plaintiff admitted she "never submitted a signed request for medical records" and admitted that the form "would have allowed APL's medical officer to follow-up directly with [her] provider to secure further clarification." [Pl. Dep. 147:12-20].

41.    Without a signed Medical Release Form, Dr. Lam and APL were not permitted to speak with Plaintiff's medical providers. [Lam Dep. at 32:5-16].

42.    On October 11, 2021, the Deputy Accommodations Coordinator emailed Dr. Lam asking him to review Plaintiff's accommodation request. The email noted the documentation

7

provided was from 2012, and also informed Dr. Lam the Accommodations Team had not received a Medical Release Form. [Ex. 1 to Lam Dep. (Combined Emails between Accommodations Team and Dr. Clarence Lam)].

43.     On October 14, 2021, Dr. Lam advised the Accommodations Coordinator he did not have enough information to fully consider her accommodation request for an exemption from the Vaccination Policy. Dr. Lam stated, "Lyme disease is not a medical contraindication to receiving the Covid vaccine. I believe there is insufficient justification in this documentation to accept this request. Further explanation as to specifically why her Lyme diagnosis would preclude her from being vaccinated would need to be submitted." [Ex 1. to Lam Dep; Lam Dep. 12:5-14].

44.     On October 14, 2021, Plaintiff sent an email reiterating her desire for an exemption from the Vaccination Policy, and still refusing to sign the Medical Release Form. [Ex. 9 to Pl. Dep. (October 14, 2021 Email from Plaintiff to Shawn McGruder and Clarence Lam)].

45.     On October 18, 2021, Dr. Lam informed the Accommodations Team he would be willing to reconsider his recommendation if Plaintiff provided more recent information from her medical provider than the 2012 documentation she submitted. Dr. Lam stated, "While the provider signed the employee's request form, the documentation that was submitted justifying the request was dated from 2012. I'd be open to reconsidering this again if the employee provides current documentation signed by the provider (or to allow 2-3 more weeks for the employee to submit this). Will defer the final decision on this to you." [Ex. 1 to Lam Dep.].

46.     On October 18, 2021, the Accommodations Team emailed Plaintiff again, stating "The medical documentation you have submitted is over nine years old. Can you please provide current medical documentation from your medical provider as to whether the previously stated concerns are still ongoing and why the COVID 19 vaccine is contraindicated with respect to your

specific medical condition." Plaintiff was asked to provide the information by November 15, 2021. [Ex. 8 to Pl. Dep. (October 18, 2021 Email from Accommodations Coordinator to Plaintiff)].

## Plaintiff Continues to Refuse to Comply with the Vaccination Policy, Provide Additional Medical Information, or Sign the Medical Release Form

47.    On November 15, 2021, Plaintiff responded to the Accommodation Coordinator's October 18, 2021 email, but did not provide more documentation explaining why, despite Lyme disease not being contraindicated for the COVID-19 vaccine according to the Centers for Disease Control and Prevention (CDC), she could not receive the vaccine. [Ex. 10 to Pl. Dep. (November 15, 2021 Email from Plaintiff to Accommodations Coordinator Listserv)].

48.    In the November 15, 2021 email, Plaintiff said that she still would not comply with the Vaccination Policy and would not sign the Medical Release Form. [Ex. 10 to Pl. Dep.].

49.    The November 15, 2021 email further states "Dr. Schwartz provided two journal articles on Lyme-induced immune dysregulation in support of my request." [Ex. 10 to Pl. Dep.].

50.    The "two journal articles" were published in 2003 and 2005, did not address COVID-19, and did not address whether someone with Plaintiff's purported condition is at risk from vaccination. [Ex. 11. to Pl. Dep].

51.    Dr. Schwartz testified the two articles he sent predate COVID-19, were not about COVID-19, and do not mention COVID-19. [Schwartz Dep. 42:2-22; 45:8-46:2].

52.    Plaintiff testified she refused to provide more information to APL other than the two journal articles because Dr. Schwartz told her "I've given the information that they need to make their decision" and "said that was sufficient." [Pl. Dep. 128:7-14; 129:17-20].

53.    Plaintiff further testified the two journal articles were all she provided from her provider to explain why she could not comply with the Vaccination Policy. [Pl. Dep. 87:12-19].

54.    But Dr. Schwartz testified he did not send her the journal articles to establish that

she could not take the COVID-19 vaccine. To the contrary, he testified "the purpose was just to give her some reading material that the autoimmune dysregulation is a common factor with Lyme disease." [Schwartz Dep. 43:1-7].

55.     Despite Plaintiff's testimony that she sent the two journal articles "because" Dr. Schwartz told her those articles were all she needed to establish contraindication, Dr. Schwartz testified "I had no idea what her plan was" with the articles and that he was only "offering her information about immune dysregulation." [Schwartz Dep. 43:15-21].

56.     Plaintiff testified the two journal articles from 2003 and 2005 establish the COVID vaccine is contraindicated for her Lyme disease diagnosis. [Pl. Dep. 157:22-158:10].

57.     On November 22, 2021, as part of the interactive process, Plaintiff met with a member of the Accommodations Team who interviewed Plaintiff to understand her particular request for accommodation. The Accommodations Team reiterated its request for Plaintiff to sign the Medical Release Form and reiterated a need for medical information that shows a medical justification for an accommodation from the Vaccination Policy. [McGruder Decl. ¶ 10].

58.     On November 29, 2021, Dr. Lam reviewed the two articles, and provided his updated medical recommendation to the Accommodations Coordinator. [Ex. 2 to Lam Dep. (Combined Emails between Dr. Lam and Accommodations Team)]

59.     Dr. Lam stated there was still not sufficient documentation to justify a medical exemption to the Vaccination Policy: "There is no evidence that Lyme disease should affect an individual's ability to be vaccinated for Covid and it is not a CDC recognized clinical contraindication. The documentation cited by the employee is 9 years old and she is unable to cite or provide more recent documentation from the provider." [Ex. 2 to Lam Dep.].

60.     Dr. Lam's November 29 email also said: "As I mentioned earlier, I am happy to

speak with the outside provider if requested/desired." [Ex. 2 to Lam Dep.].

61. Dr. Lam wanted to speak with her medical providers "to be able to understand any specifics of her condition that would warrant a recommendation of approval for this exemption." [Lam Dep. 17:16-20].

### APL Denies Plaintiff's Accommodation Request Because Plaintiff Refused to Provide More Medical Information or Allow it to Speak to her Providers

62. On November 30, 2021, because of the lack of current medical information, Shawn McGruder sent Plaintiff a letter with the subject "Medical Exemption Request from COVID Vaccination – Denied." [Ex. 12 to Pl. Dep. (Denial of Accommodation Letter)].

63. The letter stated that Plaintiff failed to provide current medical documentation that fully explained why the vaccination is medically contraindicated and refused to sign the Medical Release Form "which would have allowed APL's Medical Officer to follow-up directly with your provider to secure further clarification." [Ex. 12 to Pl. Dep.].

64. The letter then informed Plaintiff that her medical accommodation request was denied, and informed her that she had until December 7, 2021 to provide proof of a first dose of vaccination, or she would be separated from employment with APL. [Ex. 12 to Pl. Dep.].

### Plaintiff Submits Partial Lab Results from Doctor Sivieri, whose Office Conclude Plaintiff Was Not Eligible for an Exemption from the Vaccination Policy

65. On December 3, 2021, Plaintiff submitted a single page from a larger blood test result showing her "CD 57" count. [Ex. 15 to Pl. Dep. (Plaintiff Partial Labcorp Results)].

66. Plaintiff testified that blood work showing her CD 57 level established her need for an accommodation, and she believed it was sufficient because "this is what I was told by medical providers," specifically "Dr. Sivieri told me that." [Pl. Dep. 143:15-145:14].

67. Dr. Sivieri testified he disagreed with Plaintiff that her CD 57 score was an

11

indication of Lyme disease: "it does not guarantee in any way, shape, or form an active infection." [Excerpts from Deposition of Dr. Mark Sivieri at 34:9-35:15, attached as **Exhibit F;** Ex. 4 to Sivieri Dep. (Sivieri Written Responses to Plaintiff's Rule 31 Deposition Questions)].

68.     Dr. Sivieri testified "I have no idea" what Plaintiff's medical condition is, and "there's nothing in the laboratory testing that was done by my office that would give her any diagnosis. So the answer is no, I do not have any specific condition that she has at the current time." [Sivieri Dep. 17:14-19].

69.     Dr. Sivieri testified he never advised Plaintiff not to get vaccinated for COVID-19. [Sivieri Dep. 26:22-27:13].

70.     Dr. Sivieri testified that the bloodwork he performed on Plaintiff demonstrated that she tested negative for Lyme disease. [Sivieri Dep. 29:3-9].

71.     Dr. Sivieri testified that on the date of the bloodwork – November 5, 2021, there was no indication of active Lyme disease in Plaintiff's blood. [Sivieri Dep. 31:18-21].

72.     A Nurse Practitioner in Sivieri's office declined to sign a document recommending Plaintiff be exempt from the COVID-19 vaccine: "Patient will have to have conclusive lab results which show that she has [an] active infection in order to qualify for exemption to COVID vaccine, and that would only be temporary." [Ex. 1 to Sivieri Dep.].

73.     Sivieri testified "a hundred percent, yes" he agreed Plaintiff did not qualify for an exemption from the Vaccination Policy because she would need an active infection to qualify for an exemption, and that would only be temporary for as long as her blood work showed active Lyme's disease. [Sivieri Dep.23:14-24:11].

74.     On December 6, 2021, Dr. Lam confirmed the bloodwork record submitted did not change his analysis. [Ex. 15 to Pl. Dep.].

75.     On December 6, 2021 McGruder responded to Plaintiff, stating "Because the basis of your determination does not turn on whether you have established the underlying diagnosis below but, rather, whether you have established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC guidelines, the additional information does not change the determination you received last week." [Ex. 15 to Pl. Dep.].

76.     Plaintiff admitted she did not submit any documentation from her medical provider explicitly saying she was precluded from becoming vaccinated. [Pl. Dep. 113:8-14].

**APL Terminates Plaintiff's Employment for Failure to Comply with the Vaccine Policy**

77.     On December 7, 2021, Plaintiff's supervisor Amy Billups sent Plaintiff a letter informing her that her employment with APL was terminated. [Ex. 16 to Pl. Dep. (Termination Letter)].

78.     The letter stated, "you submitted a request for an accommodation, which was reviewed and considered, but ultimately denied." [Ex. 16 to Pl. Dep.].

79.     It also stated, "as a result of this violation of policy, your employment with the Laboratory is terminated as of the date of this letter." [Ex. 16 to Pl. Dep.].

80.     Plaintiff admitted she was terminated "because [she wasn't] in compliance with this policy." [Pl. Dep., 36:21-37:3].

**Plaintiff's Refusal to Sign the Medical Release Form Broke Down the Interactive Process**

81.     Dr. Lam was willing to communicate with Plaintiff's doctors regarding her accommodation request and medical history. [Lam Dep. 17:1-15].

82.     Had Plaintiff signed the Medical Release Form, Dr. Lam would have spoken to her providers. [Lam Dep. 33:12-17].

83.     Dr. Lam was not permitted to communicate with Plaintiff's medical provider without her signed Medical Release Form. [Lam Dep. 32:12-16.]

84.     Dr. Schwartz did not speak to anyone at APL regarding Plaintiff's request to be exempted from the COVID vaccine. [Schwartz Dep. 33:19-33:22].

85.     Dr. Sivieri did not speak to anyone at APL regarding Plaintiff's request to be exempted from the COVID vaccine. [Sivieri Dep. 39:8-11].

86.     Plaintiff testified Dr. Schwartz never spoke to APL because "he didn't believe that you would be open to having a real conversation." [Pl. Dep. 134:12-19].

87.     But Dr. Schwartz testified that he would have been willing to speak to APL about Plaintiff's condition and his view on whether she should receive the COVID-19 vaccine; he did not do so because no one from APL contacted him. [Schwartz Dep. 33:19-34:10].

88.     Dr. Sivieri was never asked to speak with APL about Plaintiff's request to be accommodated from the COVID vaccine. [Sivieri Dep. 39:12-13].

89.     Dr. Schwartz did not believe he was allowed to speak to APL without Plaintiff's authorization. [Schwartz Dep. 34:11-20].

90.     Dr. Sivieri did not believe he was allowed to speak to APL without Plaintiff's authorization. [Sivieri Dep. 39:14-17].

91.     In his role advising the Accommodations Team for exemptions for COVID-19 vaccination, Dr. Lam "pretty routinely" reached out to providers for other APL employees seeking accommodations. [Lam Dep. 29:14-16].

92.     There were multiple APL employees who requested accommodations where Dr. Lam requested to speak with their providers for more information. For several of these individuals, once the authorization was granted, Dr. Lam spoke to the provider and later recommended that they be granted an exemption from the Vaccination Policy. [Lam Dep. 31:3-8].

93.     APL granted 52% of the medical exemption requests it received from the

Vaccination Policy. [APL Verified Responses to Plaintiff's First Set of Interrogatories at Ex. A, attached as **Exhibit G**].

**Plaintiff's Refusal to Sign the Medical Release Form**
**Prevented APL from Conducting an Individualized Assessment**

94.     Plaintiff told no one at APL she had Lyme disease between 2012 and the date she submitted her accommodation request. [Pl. Dep. 38:15-20].

95.     Plaintiff admits none of the individuals she told about her condition in 2012 were involved in the decision to terminate her employment. [Pl. Dep. 39:9-11].

96.     Plaintiff admits she did not have any active pathogen for Lyme's disease in her bloodstream at the time she requested an accommodation. [Pl. Dep. 55:10-14].

97.     Plaintiff had no symptoms from and was not "actually suffering any ill effects" from Lyme when she submitted her request. [Pl. Dep. 56:9-10; 59:8-11].

98.     Plaintiff was "able to function relatively normal" and was able to perform her "major life activities." [Pl. Dep. 59:19-22].

99.     Plaintiff admitted she "would want [her] requests for accommodation to be considered as [] an individual… with [her] specific medical history [and] specific health reason for not being able to receive the vaccine." [Pl. Dep. 88:13-89:16].

100.    Dr. Schwartz does an individualized assessment for Lyme patients. "There is no one-size-fits-all treatment here. You have to do an individualized assessment and then you determine what [] the best path to treat them is." [Schwartz Dep. 20:12-22].

101.    Dr. Schwartz does not blanketly recommend all Lyme patients not get vaccinated, he does a "case-by-case, or a patient-by-patient analysis." [Schwartz Dep. 60:2-20].

102.    Plaintiff admitted Dr. Schwartz and Dr. Sivieri are Lyme experts, but admitted she still prevented Dr. Lam from speaking to Dr. Sivieri and Dr. Schwartz. [Pl. Dep. at 164:7-166:7].

15

103.    Dr. Lam testified "because we didn't have any documentation or ability to a [sic] release to be able to speak with the provider, we weren't able to continue the full evaluation of her request." [Lam Dep. 23:5-9].

104.    Dr. Lam felt it would have helped to speak to a specialist to help him better understand Plaintiff's condition and request for accommodation. [Lam Dep. 19:19-21:4; 26:6-13].

105.    Dr. Lam reviewed the CDC's guidance when Plaintiff made her accommodation request, and Lyme's disease was not listed as contraindicated to receiving the COVID-19 vaccine. [Declaration of Dr. Clarence Lam ("Lam Decl.") at ¶ 4, attached as **Exhibit H**].

106.    The CDC still does not list Lyme's disease as contraindicated for the COVID-19 vaccination. [Lam Decl. at ¶ 5].

107.    Plaintiff testified APL should have "just accepted" her "own recommendation" about "whether or not [she was] to be accommodated under the policy." [Pl. Dep. 148:10-15].

108.    Plaintiff testified APL "should have just – without speaking [to] medical provider or learning any more specific information other than what [she] provided [her]self, that they should have just granted the accommodation to [her] based on [her] word." [Pl. Dep. 148:16-149:3].

109.    Plaintiff admitted she is not a doctor, a medical expert or a medical provider. [Pl. Dep. 82:12-83:4].

**Plaintiff Could have Complied with the Vaccination Policy by Receiving the J&J Vaccine**

110.    Plaintiff alleges in her Amended Complaint "No APL employee reached out to her to query how APL may reasonably and safely accommodate her employment since her disability, as explicitly stated by her treating physician, precluded her from receiving the experimental mRNA vaccines." [ECF No. 21 at ¶ 16].

111.    Plaintiff testified she did not want to take the mRNA vaccines because they are

"experimental." [Pl. Dep. 109:4-110:18].

112.    Plaintiff testified her doctors said she was "precluded from taking the experimental mRNA vaccines, the mRNA vaccines were Pfizer and Moderna." [Pl. Dep. 113:15-19].

113.    In her verified Interrogatory responses, Plaintiff stated her physician believed "receiving the COVID mRNA vaccine could adversely affect my immune system." [Ex. 4 to Schwartz Deposition, (Plaintiff's Amended Objections and Responses to Plaintiff's First Set of Interrogatories), at Answer to Interrogatory No. 10].

114.    Dr. Schwartz testified the mRNA mechanism was "a large percentage" of the reason he had concerns about Plaintiff receiving the vaccine. [Schwartz Dep. 58:2-14].

115.    The Johnson & Johnson (J&J) vaccine does not use the mRNA delivery mechanism. [*Janssen COVID-19 Vaccine*, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine].[1]

116.    The J&J vaccine was available when Plaintiff requested an accommodation. [*Janssen COVID-19 Vaccine*, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine.].

117.    APL considered receipt of the J&J vaccine to comply with the Vaccination Policy without any need to engage with the Accommodations Coordinator. [McGruder Decl. ¶ 11].

118.    Multiple APL employees received the J&J vaccine in compliance with the Vaccination Policy. [McGruder Decl. ¶ 12].

119.    APL accepted other employees' decision to receive a J&J vaccine instead of an mRNA vaccine as compliant with the Vaccination Policy. [McGruder Decl. ¶ 13].

---

[1] Pursuant to Fed. R. Evid. 201, the Court can take judicial notice of the fact that the Johnson & Johnson vaccine was available at the time Plaintiff sought her accommodation and it did not use the mRNA delivery mechanism. *See also Williams v. Rodriguez*, No. 3:20-cv-806 (VLB), 2021 U.S. Dist. LEXIS 96443, at *21 n.4 (D. Conn. May 21, 2021).

120.    APL would have accepted Plaintiff receiving the J&J vaccine as means to comply with the Vaccination Policy. [McGruder Decl. ¶ 14].

## **STANDARD OF REVIEW**

Summary judgment is vital to the federal rules, designed to ensure the just, speedy and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986); Fed. R. Civ. P. 56(a). Trial judges "have an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

A plaintiff cannot avoid summary judgment without presenting sufficient evidence for reasonable jurors to find that she has proven her claims by a preponderance of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). A plaintiff "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). She must offer concrete evidence in admissible form on which "a reasonable juror could return a verdict" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Where the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to a lack of evidence to support an essential element of the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 322-23; *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). In such a situation, there can be no genuine issue as to any material fact, since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

**ARGUMENT**

I.     **APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I
FOR FAILURE TO ACCOMMODATE BECAUSE PLAINTIFF
BROKE DOWN THE INTERACTIVE PROCESS.**

"To show an employer's failure to accommodate, the plaintiff must prove: (1) that she had

a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a

reasonable accommodation would permit her to perform the essential functions of the position;

and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S.,*

*LLC*, 999 F.3d 954, 959 (4th Cir. 2021).

"Implicit in the fourth element is the ADA requirement that the employer and employee

engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atl.*

*Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005). The ADA does not require an employer to

provide the specific accommodation requested . . ., or even to provide the best accommodation, so

long as the accommodation . . . is reasonable." *Scott v. Montgomery County Gov't*, 164 F. Supp.

2d 502, 508-509 (D. Md. 2001).

APL is entitled to summary judgment on Count I because: (1) Plaintiff unilaterally broke

down the interactive process, a total bar to recovery; and (2) Plaintiff did not allow APL to explore

reasonable accommodations other than the one Plaintiff demanded.

A.     **Plaintiff's Refusal to Sign the Medical Release Form Broke
Down the Interactive Process, a Total Bar to Recovery.**

The ADA requires an employer "make reasonable accommodation to the known physical

or mental limitations of an otherwise qualified applicant or employee with a disability, unless such

covered entity can demonstrate that the accommodation would impose an undue hardship on the

operation of its business." 29 C.F.R. § 1630.9(a).

[T]o determine the appropriate reasonable accommodation[,] it may be necessary for

the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

*Berkner v. Blank*, 2013 U.S. Dist. LEXIS 34320, at \*21-22 (D. Md. Mar. 11, 2013) (citing 29 C.F.R. § 1630.2(o)(3)).

"Even if an employer's duty to engage in the interactive process is triggered," subsequent liability "may collapse for a number of reasons." *Wilson v. Dollar General Corp*., 717 F.3d 337, 347 (4th Cir. 2013). One such reason is the employee refusing to engage in the interactive process:

where it is the employee who refuses to engage in, or who causes the breakdown of, the requisite interactive process to determine a reasonable accommodation ***the employer will not be liable***.

*Williams v. Md. Dep't of Health*, 2021 U.S. Dist. LEXIS 244893, at \*20 (D. Md. Dec. 22, 2021) (cleaned up) (emphasis added). As the Fourth Circuit explained, "courts should look for signs of failure to participate in good faith" in the interactive process, and "attempt to isolate the cause of the breakdown and then assign responsibility." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011).

When an employee causes the breakdown of the interactive process, the employer cannot be liable for failure to accommodate. *Rowlett v. Balt. City Police Dep't*, 2023 U.S. Dist. LEXIS 53911, at \*30 (D. Md. Mar. 28, 2023) ("Plaintiff's decision to abandon the interactive process… caused a breakdown in the process and cannot form the basis for liability"). Ultimately, "an employer cannot be held liable ... where it is the employee who refuses to engage in, or causes the breakdown of, the requisite interactive process." *Stewart v. Ross*, 2020 U.S. Dist. LEXIS 68223, at \*38-39 (E.D. Va. Apr. 17, 2020) (cleaned up).

1.     APL's Request for More Medical Information Was Permissible
Under the ADA and a Necessary Part of the Interactive Process.

After Plaintiff submitted her request for a medical accommodation, APL was within its

rights to seek additional medical information relating to that request. As this Court has held, an

employer may request medical information during the interactive process that:

> (1) describes the nature, severity, and duration of the employee's impairment, the
> activity or activities that the impairment limits, and the extent to which the impairment
> limits the employee's ability to perform the activity or activities; and, (2) substantiates
> why the requested reasonable accommodation is needed.

*Rowlett*, 2023 U.S. Dist. LEXIS 53911 at *25-26 (citing EEOC Enforcement Guidance on

Disability-Related Inquiries and Medical Examinations of Employees under the ADA. Question

No. 10 (July 27, 2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html).

The Fourth Circuit has held employer requests for employees to submit medical records in

response to specific inquiries are "clearly a reasonably effective method of investigating" an

accommodation request. *See Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 341 (4th Cir. 2022). "The

ADA interactive process contemplates an open exchange of <u>current</u> medical information from the

employee's doctor and other information from the employee and employer about job duties." *Allen*

*v. City of Raleigh*, 140 F. Supp. 3d 470, 488-90 (E.D.N.C. 2015) (emphasis in original).

Here, it is undisputed that APL only sought medical information from Plaintiff because of

her accommodation request. APL SOF ¶ 34. It also undisputed that APL only sought medical

information related to and for the purpose of evaluating the appropriateness of Plaintiff's request

for a medical accommodation from the Vaccination Policy. APL SOF ¶ 35. It is also undisputed

that Plaintiff provided no <u>current</u> medical information from her providers. APL SOF ¶ 31. Instead,

she provided medical information that was more than nine years old that did not speak to her

current medical condition, what limitations she had, or why her purported disability required an

accommodation from APL's Vaccination Policy. APL SOF ¶ 46.

APL's inquiries were, therefore, permissible and a necessary part of the interactive process.

> 2.      Plaintiff Caused the Breakdown in the Interactive
>         Process By Refusing to Sign the Medical Release Form

It is undisputed that Plaintiff caused the breakdown in the interactive process. Indeed, she explicitly alleges in her Amended Complaint: "Plaintiff declined to sign the requested medical release." ECF NO. 21. at ¶ 21. In *Berkner*, this Court held:

> Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the interactive process.

2013 U.S. Dist. LEXIS 34320, at *22 (citations omitted). Courts have specifically held failure to sign a medical release like the one here breaks down the interactive process:

> It is undisputed that [employee] not only failed to complete the forms the [employer] requested, but that he also failed to submit the additional medical documentation the [employer] asked for during the interactive process. Thus, despite his protestations to the contrary, the record indicates that it was [employee]—not the [employer]—who was responsible for the breakdown in the interactive process."

*Ali v. McCarthy*, 179 F. Supp. 3d 54, 77-78 (D.D.C. 2016).[2] The *Ali* Court further acknowledged:

> Without such a medical release, the [employer] had no authority to obtain information from [employee]'s doctors, even though one provider had invited the [employer] to contact her. Given these roadblocks that [employee] erected, he cannot blame the [employer] for the breakdown in the interactive process.

*Id.* at 79; *see also Turcotte v. Comcast Cable Communs. Mgmt.*, LLC, 2019 U.S. Dist. LEXIS 24018 at *30-31 (D. New Hamp. Feb. 14, 2019) ("[plaintiff's] refusal to sign the [medical] release form that [defendant] reasonably requested to answer questions concerning her work restrictions caused the breakdown in the interactive process.").

---

[2] This case concerned the Rehabilitation Act, not the ADA. However, "[t]he analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the Americans with Disabilities Act ('ADA')." *Works v. Colvin*, 519 Fed. Appx. 176, 184 (4th Cir. 2013).

In *Berkner*, plaintiff requested a transfer to a different department based on what she identified as a psychiatric disability. *See* 2013 U.S. Dist. 34320, at *22.[3] The employer then "requested documentation regarding her medical diagnosis and needs." In response, plaintiff's social worker "submitted a form that addressed some, but not all of its questions." The employer "asked Plaintiff for additional information regarding her diagnosis and possible accommodations" but plaintiff never provided them. *Id.* The Court granted summary judgment to defendant on its reasonable accommodation claim "because plaintiff failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [Defendants] cannot be held liable for failing to provide reasonable accommodations." *Id.* at 22-23 (citations omitted).

Courts have similarly applied this principle to cases like this one involving exemption requests from COVID-19 vaccination policies. In *Adams v. Mass. Gen Bringham, Inc.*, the Court granted summary judgment to an employer that instituted a mandatory vaccination program against several former employees for refusing to provide physician notes to support their request:

> "[I]t is undisputed that plaintiffs [] did not provide a letter from a physician supporting their medical-exemption requests. . . the omission is fatal. An employer may require that the documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional."

2023 U.S. Dist. LEXIS 174606, at *25-26 (D. Mass. Sept. 28, 2023).

Just like this line of cases*,* the medical information needed to engage in the interactive process was in Plaintiff's sole control, and she prevented APL from accessing it. The chart below demonstrates the lengths APL went to try to seek current medical information from Plaintiff to evaluate her request between her October 1, 2021 request and her December 7, 2021 termination, and the number of times she refused to allow it:

---

[3] *Berkner* notes the "EEOC Regulations accompanying the ADA and the applicable to the Rehabilitation Act" are the same for reasonable accommodations analysis and relies on ADA cases in its analysis. *Id.* at *21-23.

| October 1, 2021 | Plaintiff submits request for accommodation but does not sign Medical Release Form. | APL SOF ¶¶ 16, 37-40 |
|---|---|---|
| October 11, 2021 | APL informs Plaintiff that she failed to sign the Medical Release Form, reiterating its request for the form | APL SOF ¶¶ 33, 34 |
| October 14, 2021 | APL informs Plaintiff it did not have enough information to grant her request and needed either additional medical documentation or the ability to speak with her doctor. Plaintiff reiterates she would not sign the Medical Release Form. | APL SOF ¶¶ 43, 44 |
| October 18, 2021 | APL informs Plaintiff it needs medical documentation more recent than the 9-year-old bloodwork she submitted. | APL SOF ¶ 46 |
| November 15, 2021 | Plaintiff reiterates she will not sign the Medical Release Form, and points to two journal articles not related to COVID from 2003 and 2005. | APL SOF ¶¶ 48-50 |
| November 22, 2021 | Plaintiff meets with APL's Accommodation Team to discuss her accommodation request, but she still will not provide more information or sign the Medical Release Form. | APL SOF ¶ 57 |
| November 29, 2021 | Dr. Lam states he still lacks medical information sufficient to evaluate Plaintiff's Request and reiterates "I am happy to speak with the outside provider." | APL SOF ¶¶ 59-60 |
| November 30, 2021 | APL issues the Denial of Accommodation Letter and gives Plaintiff 7 days to either vaccinate or provide additional information. | APL SOF ¶¶ 62-64. |
| December 3, 2021 | Plaintiff provides a single page of incomplete bloodwork showing her CD57 level, but still will not sign the Medical Release Form. | APL SOF ¶ 65 |

As this undisputed evidence demonstrates, APL repeatedly asked Plaintiff for current medical information or to allow it to speak with her providers. APL SOF ¶¶ 33, 46, 57, 63. Plaintiff alleges in her Amended Complaint she "declined" to do so and repeatedly testified the same:

> **Q:**   [the Amended Complaint] says, 'Plaintiff declined to sign the medical – the requested medical release,' is that – that's an accurate statement?
> **A:**   I didn't sign one.
> **Q:**   Okay. And so you declined to sign it, correct?
> **A:**   Yes.
> -------------
> **Q:**   Okay. But you knew that, and you write it right here, that the same employees notified you that it would enable APL's medical officer to consult with you – with your Doctor; correct?
> **A:**   Yes.
> **Q:**   Okay. And so and you declined to allow them to speak with your medical provide, among whatever else the form would have also requested?
> **A:**   Yes.

APL SOF ¶ 38. Furthermore, undisputed deposition testimony from Dr. Lam, Dr. Schwartz, and

24

Dr. Sivieri show they were all ready and willing to discuss Plaintiff's current medical condition and limitations and her accommodation request, but Plaintiff's refusal to sign the Medical Release Form was the sole reason they could not. APL SOF ¶¶ 81-90. Plaintiff alone broke down the interactive process and APL, therefore, cannot be liable for failure to accommodate.

      **B.**      **Plaintiff's Refusal to Engage in the Interactive Process Prevented the <u>Exploration of Reasonable Accommodations Other than the One She Sought.</u>**

Plaintiff's failure to accommodate claim also fails because she insisted on receiving the only accommodation she requested – a blanket exemption from the Vaccination Policy. She also believed that APL "should have just – without speaking [to her] medical provider or learning any more specific information other than what [she] provided [her]self, that they should have just granted the accommodation to [her] based on [her] word." APL SOF ¶ 108. It is well established that "[a]n employer is not required to provide an employee's choice of accommodation," *Wedderburn v. Bd. of Educ.*, 2022 U.S. Dist. LEXIS 29628, at *29 (D. Md. Feb. 18, 2022), so long as the accommodation offered is reasonable. *Scott*, 164 F. Supp. 2d at 508-509. APL cannot be liable for failure to accommodate for not granting the sole accommodation Plaintiff requested, especially given her refusal to provide APL with the information necessary to consider her requested accommodation or propose any others.

Here, Plaintiff alleges "[n]o APL employee reached out to her to query how APL may reasonably and safely accommodate her employment since her disability, as explicitly stated by her treating physician, precluded her from receiving the experimental mRNA vaccines." AC ¶ 16. First, this is untrue. As the chart in Section I.A.2 above shows, APL personnel repeatedly asked Plaintiff for current medical information from her providers. APL personnel also repeatedly asked Plaintiff to authorize Dr. Lam to speak with her providers. She refused.

Second, the record evidence establishes that had Plaintiff not broken down the interactive

process, APL would have considered and/or proposed any number of alternate accommodations. It might have accepted Plaintiff's requested accommodation outright. As Dr. Lam testified: "in this instance, because we didn't have any documentation or ability to a release to be able to speak with the provider, we weren't able to continue the full evaluation of her request." APL SOF ¶ 103.

Third, by Plaintiff's own allegations, her physicians only recommended that she not receive the COVID-19 vaccinations that contained the mRNA delivery mechanism. Her physicians did not recommend that she not take any vaccines, including those without the mRNA delivery mechanism.[4] It is undisputed that the Johnson & Johnson vaccine was available at the time Plaintiff was requesting an accommodation, and it does not use the mRNA delivery mechanism. APL SOF ¶ 116. The record shows that APL would have accepted Johnson & Johnson as compliant with the Vaccination Policy without the need for an accommodation. APL SOF ¶ 117. Plaintiff's medical provider testified the mRNA delivery mechanism was a "large percentage" of his concern about the vaccine. APL SOF ¶ 114. If Plaintiff had only wanted to avoid an mRNA vaccine, APL would have accepted her receiving a different vaccine as compliant with the Vaccination Policy, and she would not have needed an accommodation at all. APL SOF ¶¶ 118-120. But because Plaintiff would only accept the lone accommodation she requested – a blanket exemption from the Vaccination Policy – and she unilaterally broke down the interactive process, she never even bothered to explore with APL whether she could have gotten what she wanted. Plaintiff simply refused to engage with APL and broke down the interactive process. APL cannot be liable for failure to accommodate for not granting Plaintiff's accommodation request without any current medical information to support it.

---

[4] Indeed, Dr. Sivieri's office believed that Plaintiff would "have to have conclusive lab results which show that she has [an] active infection in order to qualify for exemption to COVID vaccine, and that would only be temporary." APL SOF ¶ 72. Her lab results showed she did not have an active infection. APL SOF ¶ 70.

## II. APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR DISCRIMINATION BECAUSE IT DID NOT DISCRIMINATE AGAINST PLAINTIFF BECAUSE OF HER ALLEGED DISABILITY.

APL is entitled to summary judgment on Count II of Plaintiff's claim for "Employment Discrimination" under the ADA because the undisputed facts establish APL did not terminate Plaintiff's employment because of her disability.

"To establish a prima facie case for disability discrimination under the ADA, a plaintiff must prove: (1) that she has a disability,[5] (2) that she is a 'qualified individual' for employment in question, and (3) that her employer discharged her or took other adverse employment action because of her disability." *Lacasse v. Didlake, Inc.*, 712 Fed. Appx. 231, 238-39 (4th Cir. 2018). A plaintiff must establish "but-for" causation "between the decisionmakers and Plaintiff's alleged disability." *Harvey v. Jai Med. Ctr.*, 2021 U.S. Dist. LEXIS 192008, at \*13 (D. Md. Oct. 5, 2021).

In *Jorgenson v. Conduent Transp. Solutions, Inc.*, this Court held an employee terminated for failing to follow his employer's COVID vaccination policy could not maintain a disability discrimination claim:

> [Plaintiff] has failed to plausibly allege that he was terminated because of his alleged disability. To demonstrate discrimination under the ADA, Plaintiff must meet the 'but for' standard of causation. *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016). The record here, as attached by Plaintiff to his Amended Complaint, reflects [employer]'s persistent efforts to procure his compliance with the attestation policy, and its eventual ultimatum that he would be terminated if he refused to comply. **Put simply, then, Plaintiff has not plausibly alleged that [employer] possessed some discriminatory animus linked to Plaintiff's unknown medical condition. He was simply terminated for failing to adhere to company policy. Given the distinct lack of allegations linking Plaintiff's termination to any actual or perceived disability, 'but for' causation has not been plausibly alleged.**

---

[5] It is undisputed that at the time of Plaintiff's accommodation request she had no active Lyme pathogen in her blood, was not "actually suffering any ill effects" from Lyme, was "able to function relatively normal[,]" and was able to perform her "major life activities[.]" APL SOF ¶ 98. It is also undisputed that Plaintiff submitted nine-year old documentation with her Accommodation Request. APL SOF ¶ 31. Plaintiff's doctor testified he has "no idea" what her medical condition is, and "there's nothing in the laboratory testing that was done by [his] office" that would allow him to diagnose her with Lyme's disease or anything at all. He testified he did not know of "any specific condition that she has at the current time." APL SOF ¶ 68. Given this undisputed evidence, it is unclear whether Plaintiff can meet her burden to prove that at the time of her request she was a qualified individual with a disability under the ADA.

Plaintiff's ADA discrimination claim will be dismissed."

2023 U.S. Dist. LEXIS 18463, at *12-13 (D. Md. Feb. 2, 2023) (*affirmed by Jorgenson v. Conduent Transp. Sols., Inc.*, 2023 WL 4105705 (4th Cir., June 21, 2023)) (emphasis added).[6]

The facts here are the same as those alleged in *Jorgenson*. Plaintiff expressly concedes she was not terminated because of her disability. APL SOF ¶ 80. Instead, APL terminated Plaintiff's employment because she refused to comply with the Vaccination Policy. Plaintiff's purported disability had nothing to do with the decision. As in *Jorgenson,* APL engaged in "persistent efforts to procure [her] compliance" and told Plaintiff repeatedly "[s]he would be terminated if [s]he refused to comply." Plaintiff's termination letter states she was terminated for violating the Vaccination Policy: "as a result of this violation of policy, your employment with the Laboratory is terminated as of the date of this letter." APL SOF ¶ 79. Plaintiff agrees; she testified that she was terminated for failing to follow the Vaccination Policy:

> **Q:**     Correct, and what the lab ultimately did was terminate you because you weren't in compliance with this policy; is that right?
> **A:**     Correct.

APL SOF ¶ 80. APL is therefore entitled to summary judgment on Count II.

### III.     APL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III ALLEGING "PROHIBITED EXAMINATION AND INQUIRY" UNDER THE ADA BECAUSE APL'S INQUIRIES WERE JOB-RELATED AND NECESSARY.

The undisputed facts show APL is entitled to summary judgment on Count III of the Amended Complaint alleging "violation of the [ADA] and Amendments Prohibited Examination and Inquiry, 42 U.S. 12112 et. seq."  Section 42 U.S.C. § 12112(d)(4)(A) states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to

---

[6] In this regard, the Fourth Circuit has consistently held that "extensive, unrefuted evidence that [an employee] violated [an employer's]…policies establishes a legitimate, nondiscriminatory business reason for [the employee's] termination." *Giberson v. Fleet Fin.*, 1997 U.S. App. LEXIS 4064, at *2 (4th Cir. Mar. 7, 1997).

the nature or severity of the disability, unless such examination or inquiry is shown to
be job-related and consistent with business necessity.

"The interpretative guidelines to the ADA explain that [this provision] was intended to prevent
against medical tests and inquiries that do not serve a legitimate business purpose." *Leonard v.
Electro-Mechanical Corp.*, 36 F. Supp. 3d 679, 685 (W.D. Va. 2014) (quoting 29 C.F.R. pt. 1630,
App'x 1630.13(b)) (internal quotations omitted).

"An employer's request for medical records or medical examination may be construed as
job-related and consistent with business necessity if … the employee requests an accommodation."
*Coffey v. Norfolk S. Ry. Co.*, 2021 U.S. Dist. LEXIS 46473 at *8-9 (E.D. Va. Feb. 5, 2021)) (*aff'd
by Coffey,* 23 F.4th 332 (4th Cir. 2022); *see also Frye v. ACR*, 2020 U.S. Dist. LEXIS 269603, at
*25-27 ("E.D. Va. March 11, 2022) (*aff'd by Frye v. ACR*, 2022 U.S. App. LEXIS 2937) (4th Cir.
Feb. 1, 2022). "One concern under 42 U.S.C. § 12112(d)(4)(A) arises from ensuring public and
workplace safety." *Coffey*, 2021 U.S. Dist. LEXIS 46473 at *8-9.

In her Amended Complaint, Plaintiff alleges APL violated 42 U.S.C. § 12112(d)(4)(A)
when it "attempt[ed] to determine whether a positive diagnosis of the Lyme pathogen (indicating
active Lyme disease) established a condition that is contraindicated for receiving the COVID-19
vaccination according to CDC." ECF No. 21, at ¶ 21.

APL is entitled to summary judgment on Count III for three reasons. First, a medical
inquiry is permissible if the "inquiry is shown to be job-related and consistent with business
necessity." Plaintiff testified that inquiries into this policy are "job-related":

> **Q:**     Okay. And when issues arise about those policies and whether or not
> they've been violated or whether or not they apply to any individual employee,
> questions about those policies, they would be job-related question; right?
> Because it's a requirement for everyone in their job; is that right?
> **A:**     Yes.

APL SOF ¶ 10.

Second, it is undisputed that the job-related inquiries arose from and only after Plaintiff requested a medical accommodation from the Vaccination Policy. On October 1, 2021, Plaintiff submitted her request for a medical accommodation. APL SOF ¶ 16. On October 11, 2021, APL's Accommodations Team asked Plaintiff to sign the Medical Release Form so that it could communicate with her medical providers. APL SOF ¶ 33. On October 14, 2021, Dr. Lam asked for further explanation for specifically why her Lyme diagnosis would preclude her from being vaccinated. APL SOF ¶ 43. On October 18, 2021, APL asked "Can you please provide current medical documentation from your medical provider as to whether the previously stated concerns are still ongoing and why the COVID 19 vaccine is contraindicated with respect to your specific medical condition." APL SOF ¶ 46. APL repeatedly told Plaintiff that it desired to speak to her medical providers to gather information in direct response to her medical accommodation request. The Fourth Circuit has squarely held that this is permissible. *See Hannah P.*, 916 F. 3d at 339 ("An employer's request for a medical examination is job-related and consistent with business necessity when…the employee requests an accommodation[.]") (citations and quotations omitted).

Third, the requests APL made "arises from ensuring public and workplace safety." *Coffey*, 2021 U.S. Dist. LEXIS 46473 at *8-9. APL's Accommodations Coordinator testified the reason for the policies and inquiries into accommodations "was for the safety of staff," to determine "whether or not [Plaintiff] could safely perform her job functions" and whether Plaintiff remaining unvaccinated could pose a "danger" to her coworkers. These are permissible reasons for medical inquiry under the ADA. APL SOF ¶ 36. APL is therefore entitled to judgment on Count III.

## CONCLUSION

For all these reasons, APL has shown that there are no material facts in dispute, and APL is entitled to summary judgment as a matter of law on all counts of Plaintiff's Amended Complaint.

Dated: January 11, 2024                    Respectfully submitted,


**JACKSON LEWIS P.C.**

By:     <u>/s/ Jeremy S. Schneider</u>
Jeremy S. Schneider (MD Bar No. 14104)
Jason A. Ross (MD Bar No. 30423)
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Fax: (703) 483-8301
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com

***Counsel for Defendant Johns Hopkins University Applied Physics Laboratory LLC***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 11th day of January, 2024, I caused a copy of the foregoing to be electronically filed with the Clerk of Court and sent to the following via U.S. first class mail, postage prepaid:

Marc D. Schifanelli
PO Box 1023
Stevensville, MD 21666
marc@schiflaw.com

***Counsel for Plaintiff***

/s/ Jeremy S. Schneider
Jeremy S. Schneider