IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SALLY W. TARQUINIO<br><br>        Plaintiff<br><br>v.<br><br><br>JOHNS HOPKINS UNIVERSITY<br>APPLIED PHYSICS LAB<br><br><br>        Defendant | CIVIL ACTION NO:  1:23-cv-00727-RDB |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Sally W. Tarquinio, by and through counsel, and respectfully requests that this Honorable Court deny the Defendant's Motion for Summary Judgment in its entirety and for reasons states:

**SUMMARY OF ARGUMENT IN OPPOSITION**

Defendant APL has moved the Court to grant summary judgment as to each of the three causes of action set forth in Plaintiff Tarquinio's Amended Complaint. Tarquinio generally opposes the motion as to Counts II and III, and specifically as to Count I, i.e.,

*failure to accommodate.* As to this latter cause of action, Defendant APL argues that Tarquinio was at fault for the breakdown of the interactive process because she would not sign a general medical authorization form that would "enable APL's medical officer to consult with [her] medical provider on any necessary follow up," and "allow [APL's medical doctor] to speak with her medical providers to gather more information about her request for accommodation." APL contends that Tarquinio's failure to grant it authority to speak directly to her doctor precluded it from the "exploration of [a] reasonable accommodation other than the one she sought," i.e., COVID-19 vaccine-avoidance. APL concludes that because Tarquinio was responsible for the breakdown of the interactive process it is released from any obligation to provide a reasonable accommodation to Tarquinio and thus summary judgment is appropriate.

Whereas the ADA and case law do provide that an employer *may in certain circumstances* have a right to 'request medical documentation' from the employee during the interactive process, that right is not unqualified. Per the ADA, there are several explicitly stated conditions precedent that must be satisfied before any such request will be considered 'reasonable' under the spirit of the interactive process.

As a threshold matter, EEOC guidance provides that an employer may only request medical documentation from an employee if - and only if - "the disability or the need for the accommodation is not known or obvious." Although more restrictions on such requests will be discussed forthwith, this initial fact *must* be present. That is, if the employer has been made aware of the specific disability (here, immune dysregulation) and the need for the accommodation to be excepted from the vaccine requirement, then it has been "put on

notice" of its obligations under the ADA to provide the accommodation to the extent that it is not unreasonable or overly burdensome.

In this case, APL's Accommodations Team provided to interested employees a standard form titled "Employee Request for Medical Accommodation." This form was accompanied by another titled "Medical Verification for Exemption from COVID-19 Vaccination Requirement." Tarquinio completed and submitted to the Accommodations Team both forms. The second form specifically named the disability as "*Lyme Induced Immune Dysregulation*." The Doctor who signed this Medical Verification was Dr. Mark Schwartz, and in deposition testimony he confirmed that "Lyme induced immune dysregulation [was] an accurate diagnosis for Ms. Tarquinio's condition…" and that – as stated clearly on the form – he recommended avoidance of the COVID-19 vaccine because of that disability.  Hence, APL had asked for a medical provider's verification, the name and nature of the specific disability, and the appropriate accommodation. It had all three pieces of information in the very form that it created for that purpose. From the moment that Tarquinio submitted the forms to the Accommodations Team, APL was lawfully on notice of all the information required by the ADA. Repeatedly asking Tarquinio to sign an omnibus medical release so it could speak directly to Dr. Schwartz regarding an accommodation to which it had already been made aware was, as will be seen, directly contrary to the ADA and the spirit of the interactive process.  Because the request was outside the scope of the ADA, APL cannot blame Tarquinio for any alleged breakdown in the process and thereby avoid liability for its failure to accommodate her reasonable request.

Second, in the event that APL can, *arguendo*, establish as a matter of fact that after receiving its own custom, signed Verification Form that either the specific disability or the vaccine-avoidance accommodation were somehow still unknown to it, any request for medical documentation – whether to the individual or to her doctor - must be narrowly tailored. In those cases where either the disability or reasonable accommodation is still unknown, EEOC guidance provides that "[t]he individual can be asked to sign a limited release allowing the employer to submit a list of specific questions to the health care or vocational professional." Further, "employers should specify what types of information they are seeking regarding the disability, its functional limitations, and the need for reasonable accommodation."

A limited release to submit specific questions to her doctor regarding the <u>unknown</u> disability or accommodation is *not* equivalent to requiring the employee to sign a general release which could be used to secure the employee's entire medical record or allow the employer to call the physician on the phone. Yet this is exactly what APL was requiring Tarquinio sign. The release was not tailored to "the disability, its functional limitations, and the need for reasonable accommodation." It did not contain specific questions requesting such information.

Third, the facts clearly show that APL's intent during the interactive process was never to inquire of her doctor as to the nature of her disability or to find a reasonable accommodation "other than the one she sought." Rather, APL's intent was interrogate her doctor as to (in APL's own words) "*why* the COVID 19 vaccine is contraindicated with respect to [her] specific medical condition," and whether that condition "warrant[ed] a recommendation of approval for this exemption." Challenging an employee's health care

provider as to "why" he came to the conclusions that he did regarding both his patient's disability and his recommended accommodation is not only humiliating, but outside the scope of the interactive process. Determining an otherwise unknown disability and a reasonable accommodation is the entire *raison d'etre* of the interactive process. APL had clearly been apprised of both as confirmed by Dr. Schwartz' signature on its Verification Form specifically created for that purpose.

Using the interactive process for a motive other than to identify the disability and/or reasonable accommodation is an abuse of that process and is an indicator of a lack of good faith which is required throughout the process. Therefore APL was responsible for either 1) not engaging in good faith in the interactive process – a process between the employer and employee;  or 2) for having caused any alleged "breakdown" in that process. Placing the blame on Tarquinio for refusing to sign broad, blanket medical release allowing APL to "reach out" to her physician for information already known to it is contrary to the spirit of the interactive process and pretextual.

Finally, APL's bald assertions that Tarquinio's refusal to sign broad authority to her employer prevented it from "consider[ing] or propos[ing] any number of alternate accommodations…" is simply false since no other vaccine-avoidance accommodation was possible. That is, you either get the vaccine and thereby introduce an antigen into your already compromised immune system or you don't. There is no reasonable alternative or in-between accommodation like getting only half a dose of the antigen. What became known as the "Covid protocols" were not accommodations in themselves, but rather mitigating factors to be considered when analyzing whether the vaccine-avoidance accommodation could be provided without creating an undue burden to APL which had

since at least March, 2020, allowed its employees to work inside its offices without having been vaccinated. At all times, Tarquinio was and remained qualified to perform the essential functions of her job and position at APL.

Consequently, APL failed to engage in good faith in the interactive process to identify a reasonable accommodation other than the one explicitly requested and recommended by her treating physician, to wit: COVID vaccine-avoidance due to her immune dysregulation. It failed to provide that specific, reasonable accommodation and can show no other possible alternative accommodation, even speculatively, that could have served as an alternate to vaccine-avoidance. It cannot show that granting the accommodation would have been overly burdensome to it.

## STATEMENT OF FACTS

1. APL hired Plaintiff as a Systems Engineer in 2005. [Mot.S.J., p. 2]

2. On September 14, 2021, APL announced that the COVID-19 vaccination was a condition of employment for all APL staff. [Id., p. 3]

3. On October 1, 2021, Plaintiff submitted an "Employee Request for Medical Accommodation" form to APL'S Accommodations Coordinator. [Id. p. 4]

4. On the form, Plaintiff requested an accommodation of exemption from the COVID-19 vaccination requirement. [Ex. 1, JHU00002]

5. Plaintiff also submitted an APL form titled "Medical Verification for Exemption from COVID-19 Vaccination Requirement." [Ex. 1, JHU00003] This Verification Form identified "Lyme Induced immune dysregulation" as her disability and

included a standard statement that "I certify that [*Sally Tarquinio*] has the above contraindication and request their medical exception from COVID vaccination." [Id.] The form was signed by Plaintiff's health care provider, Dr. Mark Schwartz. [Id.].

6. In deposition testimony, Dr. Schwartz testified that "chronic Lyme disease plus Lyme-induced immune dysregulation [is] an accurate diagnosis for Ms. Tarquinio's condition…" [Ex. 2, Schwartz Depo., 29:12-17]

7. In his deposition testimony, Dr. Schwartz testified that for patients "suffering with immune dysregulation for the majority of the time that I'm seeing, it's probably not smart to put in another antigen during that -- that -- that moment when the situation arises. And so I -- my firm belief is that, you know, if you're immune dysregulated, autonomic dysregulated, it's probably not good to put an antigen in." [Id., 60:2-14]. All vaccines available at that time, including *Johnson & Jonhson*, were *antigens*, i.e., "a foreign substance which induces an immune response in the body, especially the production of antibodies." [Websters Dic.]

8. After Tarquinio submitted to APL Dr. Schwartz' signed attestation on its Verification Form created by it for that purpose and dated 9/21/2021, the Accommodations Team on 10/18/2021 asked Tarquinio via email to "provide current medical documentation from your medical provider as to whether the previously stated concerns are still ongoing…" [Mot.S.J. p.8, ln. 46].

9. In the same email, the Team asked for documentation explaining "*why* the COVID 19 vaccine is contraindicated with respect to your specific medical condition." [Id, (emphasis added)]. Tarquinio responded to all emailed requests, including providing articles given to her by her medical provider. [Id.]

10. On November 22, 2021, the Accommodations Team informed Tarquinio that it needed a signed Medical Release Form as well as "a need for medical information that shows a medical justification" for the vaccine-avoidance accommodation. [Mot.S.J. p.10].

11. The medical release form that APL provided Tarquinio to sign was an omnibus release of medical information not specifically tailored to her known disability or requested accommodation. [Ex.1, Medical Release Form]  It was not filled in by the APL Accommodations Team and/or Dr. Lam. [Id.]

12. Dr. Lam, the APL medical doctor assisting the Accommodations Team, testified that "because we didn't have any documentation or ability to a [sic] release to be able to speak with the provider, we weren't able to continue the full evaluation of her request." [Mot.S.J., p. 16].

13. Dr. Lam only wanted to speak to her medical provider in order to ascertain "[h]er medical history in relation to this accommodation request," and "[t]o be able to understand any specifics of her condition that would warrant a recommendation of approval for this exemption." [Ex. 3, Lam Depo., 17:12-20]. Dr. Lam determined that "Lyme Disease" was not contraindicated for the COVID-19 vaccine. [Mot.S.J., p.8].

14. Dr. Lam never met or communicated directly with Tarquinio. [Id., 16].

15. The APL Accommodations Coordinator never met with Tarquinio. [Ex. 4, McGruder Depo., 33:16-18].

16. The APL Accommodations Assistant never met with Tarquinio. [Ex. 5, Bunda-Lee Depo., 13:21, et. seq.].

17. Dr. Lam and the Accommodations Team had knowledge that Tarquinio's was requesting the accommodation of COVID-19 vaccine avoidance specifically because of her immune dysregulation disability since this information was provided and verified on the Verification Form that it created.

18. Tarquinio's employment was terminated after APL apparently could not verify that her disability was *Immune Dysregulation* as noted on the physician-signed Verification Form and/or identify the reasonable accommodation of vaccine-avoidance listed on the same Verification Form.

## LAW

**Failure to Accommodate**

To establish a prima facie case for failure to accommodate, a Plaintiff must show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir.2013). *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562 (4th Cir. 2015)

**Immune Dysregulation is a Disability within the Meaning of the ADA**

"In September 2008, Congress broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir.2014).

The ADA Amendments Act (ADAAA) was intended to make it "easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). The regulation clarifies that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." Id. "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub.L. No. 110–325, § 2(b)(5) (2008). In enacting the ADAAA, Congress abrogated earlier inconsistent caselaw. Summers, 740 F.3d at 331."

42 U.S.C. 12102 as amended by the ADAAA defines 'disability' with respect to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such impairment," or "being regarded as having such an impairment…" 42 U.S.C. 12102 (1).

A "major life activity also includes the operation of a major bodily function, including but not limited to, **functions of the immune system**, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. 12102 (2) (B)(emphasis added).

**The Interactive Process**

"[T]he ADA contemplates an open, interactive process between the *employer and employee* to 'identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome the limitations.'" *Allen v. City of Raleigh* 140 F. Supp. 3d 470 (E.D.N.C. 2015), citing 29 C.F.R. § 1630.2(*o* ) (3); *EEOC v. Kohl's Dep't Stores, Inc.,* 774

F.3d 127, 132–33 (1st Cir.2014); *Wilson v.Dollar Gen. Corp.,* 717 F.3d 337, 346–47 (4th Cir.2013) (emphasis added; further citations omitted).

"The duty to engage in the interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." Id., *quoting Wilson*, 717 F.3d at 346–47 (emphasis added). "[T]he interactive process is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." Id. at 347 (quotation omitted, emphasis added). The Fourth Circuit (like all the other federal circuits to address the issue) has emphasized:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown. *Allen v. City of Raleigh* 140 F. Supp. 3d 470 (E.D.N.C. 2015)

**Documentation Requests**

In its *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA*, the EEOC states that

> "an employer [may] ask an employee for **documentation** when s/he requests a **reasonable accommodation.** Thus, when the **disability or the need for the accommodation is not known or obvious,** it is job-related and consistent with business necessity for an employer to ask an employee for reasonable documentation about his/her disability and its functional limitations that require reasonable accommodation." Question 7, citing ADA, Rehabilitation Act, 29 CFR Part 1630, 29 CFR Part 1614; available here: *https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#N_55_* (emphasis in original).

Only if this threshold element is present – that the disability or accommodation is *unknown* – and documentation is thus required, the guidance narrows the type of documentation that can be pursued, to wit:

> "[a]n employer may require an employee to provide documentation that is sufficient to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested, but cannot ask for unrelated documentation. This means that, in most circumstances, an employer cannot ask for an employee's complete medical records because they are likely to contain information unrelated to the disability at issue and the need for accommodation.
> https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#N_55_

The guidance goes on to describe methods for securing documentation when the disability or accommodation is unknown:

> "In requesting documentation, **employers should specify what types of information they are seeking** regarding the disability, its functional limitations, and the need for reasonable accommodation. **The individual can be asked to sign a limited release allowing the employer to submit a list of specific questions to the health care or vocational professional**.
>
> "As an alternative to requesting documentation, an employer may simply discuss with the person the nature of his/her disability and functional limitations. It would be useful for the employer to make clear to the individual why it is requesting information, i.e., to verify the existence of an ADA disability and the need for a reasonable accommodation." https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (emphasis in original).

## ARGUMENT

### As a Matter of Law The Court Should Not Dismiss Count I Failure to Accommodate

In order to prevail in a cause of action for failure to accommodate, Tarquinio must show that she had a disability recognized by the ADA, that APL had notice of it, that she could perform the essential duties of her position if granted a reasonable accommodation,

and that APL refused to make such accommodation. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir.2013). If a reasonable accommodation is not immediately known, the employer and employee are required to participate in good faith to identify such accommodation. If that process breaks down, the Court can consider the facts and assign blame to one party or the other.

Tarquinio was an individual who had a qualified disability within the meaning of the ADA

At all relevant times, Plaintiff Sally Tarquino was disabled as defined under the ADA and section 3 of the ADAAA, *supra*, to wit: she suffered from *immune dysregulation* - an impairment of the functioning of her immune system which is explicitly cited as a disability. 42 U.S.C. 12102.

APL had notice of her disability.

Prior to her employment termination by Defendant APL for failing to be vaccinated against COVID-19, Tarquinio submitted a request for an accommodation under the ADA. Specifically, Tarquinio requested an accommodation that she be exempted from APL's mandatory COVID-19 vaccination requirement. Her request for this vaccine-avoidance accommodation was in writing and was signed by her physician, Dr. Mark Schwartz, on the form created by APL for these very purposes, i.e., its Medical Verification for Exemption from COVID-19 Vaccination Requirement. Dr. Schwartz specified on the request that Tarquinio suffered from "Immune Dysregulation" and recommended that she be granted the accommodation and be exempted from APL's mandatory COVID-19 vaccine policy.

<u>With a reasonable accommodation Tarquinio could perform the essential functions of the position.</u>

It is uncontested that Tarquinio could not perform the essential functions of her position as an engineer. To the extent that the COVID-19 vaccination requirement was actually an essential function of any engineering job, Tarquinio could certainly have continued to be able to fulfill her duties using her education and experience had APL granted her accommodation request to avoid the vaccination because of her compromised immune system.

<u>APL refused to make such accommodation.</u>

APL admits that it denied Tarquinio's request for accommodation. Arguably it did this without engaging in the interactive process in good faith, without ever meeting with Tarquinio in order to discuss her request, and after deciding that she was responsible for a "breakdown" in the process of identifying a reasonable accommodation.

<u>APL Did not Participate in the Interactive Process in Good Faith and Tarquinio Was Not Responsible for Any "Breakdown" of the Process.</u>

Throughout its Memorandum in Support of Summary Judgment, Defendant APL consistently argues that it is not liable for a *failure to accommodate* because it was Tarquinio who was at fault for the "breakdown" of the interactive process by failing to authorize APL employees to contact Dr. Schwartz and ask him, not what a reasonable accommodation could be, but rather "why the COVID 19 vaccine is contraindicated with

respect to [her] specific medical condition." Fault for a breakdown of communications during the interactive process is not so easily assigned.

The legislative history of the ADA interactive process, as well as case law from the Fourth Circuit, make clear that the interactive process is not an end in itself, but rather is a means for determining <u>what reasonable accommodations are available</u> that will allow the disabled individual to perform the essential job functions of the position, and which is both reasonable and not overly burdensome to the employer. It is a collaborative effort to find an accommodation that both satisfies the employee's needs and is within the means of the employer to provide (i.e., reasonable and not overly burdensome).

The process is an informal interaction between the *employer and employee*. The ADA does not specify any other third party as part of interactive process. When an employee's physician or some other subject matter expert is required to be consulted, it is for the narrow purpose of identifying a proper accommodation. At no time did APL ask that Tarquini "sign a limited release allowing [it] to submit a list of specific questions to the health care or vocational professional," or discuss with her why it wanted the documentation or information and the best, narrow way to procure it from her doctor.

The interactive process is <u>not</u> a tool to be used by an employer to question, second guess, or undermine the physician's diagnosis of the employee's disability and/or his recommendation that the disability requires accommodation. It is not meant as an opportunity for an employer to challenge the existence of the employee's disability in order to "fully evaluate" or determine "whether the accommodation is warranted…"

In this present matter, it is clear from APL's elaborated statement of facts in its motion for summary judgment that this was the exact and sole purpose for which APL

intended to pursue dialogue with Tarquinio's physician. APL makes clear that it required Tarquinio to sign a broad medical records release that would "allow it to speak to her providers." APL states that it wanted the signed medical release so that it could reach out to her physician in order to determine "why the COVID 19 vaccine is contraindicated with respect to [her] specific medical condition." Defendant APL's own physician, Dr. Lam, wanted to question Plaintiff's physician "to be able to understand any specifics of her condition that would warrant a recommendation of approval for this exemption."

In other words, Defendant APL was not interested in speaking to Tarquinio's physician in order to determine what a reasonable accommodation or even an alternative accommodation could be – the true collaborative purpose of the interactive process. Instead, APL wanted to interrogate her physician and question his medical diagnosis, and specifically the basis for his recommendation that Tarquinio avoid introduction of the antigen, i.e., the COVID vaccination. Nowhere does APL state that it wanted to contact Tarquinio's providers in order to determine what an appropriate accommodation could be.

This is even more clear given the unique circumstances of the COVID-19 vaccination accommodation requests generally in theory as well as in practical application. That is, avoidance of the vaccine/antigen *is* the accommodation. It is *the only* accommodation. There is no other accommodation that can be construed or distilled from such a request to avoid the vaccine due to disability or, for that matter, religious purposes. It is in a sense a 'negative' accommodation: one is either granted the accommodation and avoids the vaccine or one is not granted the accommodation and is required to be vaccinated or lose her employment. There is no other option, no other in-between accommodation, and no compromise, e.g., receiving a half-dose instead of a full dose. The vaccine-

avoidance accommodation is unlike other 'positive' accommodations, for example, determining how to accommodate an employee with a spinal injury by purchasing a certain type of ergonomic chair, providing him more frequent break times, a modified work schedule, and so forth.[1]

In its memorandum in support, APL alleges that had Tarquinio "not broken down the interactive process, APL would have considered and/or proposed any number of alternate accommodations." However, nowhere does it put forth even one such alternative accommodation even in the hypothetical because there is no alternative for a vaccine-avoidance accommodation: you either get it or you don't. This is critical to the Court's current consideration of assigning blame for the alleged breakdown in the interactive process and whether, as APL would have it, Tarquinio was responsible or if APL was not proceeding in good faith by requiring that it speak in person to her doctor with no intent to identify a reasonable accommodation, i.e., the *raison d'etre* of the interactive process.

As will be discussed in more detail below, courts have held with respect to employers who are accused of causing the failure of the interactive process, that such a failure becomes actionable <u>only if a reasonable accommodation was available</u>, but the employer prevented its identification by failing to engage in the interactive process. *Martinez v. American Airlines, Inc*. 715 Fed. Appx. 568 (7th Cir. 2018). That is, if there was no possible accommodation for the specific ADA covered disability, then the employer should not be liable for failing to pursue the interactive process. This logic appears sound.

---

[1] What became known as the "covid protocols" (distancing, masking, self-reporting, etc.) are not accommodations, neither individually nor collectively, but only go toward the subsequent legal determination of whether an employer can reasonably and without excessive burden allow the vaccine avoidance accommodation.

And applying the same logic here, an employee like Tarquinio accused of fault for a breakdown in the accommodations identification process should not be deemed at fault where no other reasonable accommodation other than the one explicitly requested could possibly be identified. Vaccine avoidance due to immune dysregulation is an accommodation without alternative, whether one is authorized to speak with the employee's doctor or not. APL can identify no other accommodation other than vaccine-avoidance that could have possibly come from 'reaching out' and speaking to her doctor to discover "why the COVID 19 vaccine is contraindicated with respect to [her] specific medical condition." APL was clearly interested only in having the doctor justify his findings and conclusions – not in a good faith effort to identify some other possible accommodation – but to consider whether the vaccine-avoidance accommodation "warranted" APL's approval. These reasons for wanting Tarquinio to give them authority to speak to her physician are beyond the scope of the interactive process and APL sought such authority not in a good faith effort to find some possible accommodation besides vaccine avoidance, but to interrogate her physician as to whether or not his diagnosis "warrant[ed] a recommendation of approval for this exemption."

The only accommodation in respect to her disability was identified upon her doctor-signed request for it and there is sufficient evidence to show that she participated in good faith in the interactive process by responding to each and every APL inquiry. APL's demands that they speak to her physician in order to question him as to "why the COVID 19 vaccine is contraindicated with respect to [her] specific medical condition" was beyond the letter and spirit of the interactive process. As such, Tarquinio was not responsible for the breakdown of the interactive process, APL failed to pursue her request for

accommodation in good faith, failed to accommodate her disability pursuant to the ADA and ADAAA, and has provided no facts to support a showing of undue hardship should it have granted Tarquinio's reasonable request for accommodation.

**WHEREFORE,** Plaintiff respectfully requests that the Court dismiss the Defendant's Motion for Summary Judgment as to all counts.

Respectfully submitted,

*Marc Schifanelli*

Marc D. Schifanelli
Bar No.: 27753
P.O. Box 1023
Stevensville, Maryland 21666
240-882-2402

CERTIFICATE OF SERVICE

I hereby certify that on __01/25/2024_ a copy of the foregoing Motion for Leave to Amend was served upon counsel for the Defendant via the electronic filing system only.

*Marc Schifanelli*