IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SALLY TARQUINIO | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-0727 |
| JOHNS HOPKINS UNIVERSITY APPLIED PHYSICS LAB | * | |
| | * | |
| *Defendant.* | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case involves claims under the Americans with Disabilities Act and Amendments ("ADAAA"), 42 U.S.C. § 12112, *et seq.*, for failure to accommodate, employment discrimination, and prohibited examination and inquiry. Plaintiff Sally Tarquinio worked as an engineer at Johns Hopkins University's Applied Physics Lab ("APL") beginning in September 2005. In response to the COVID-19 pandemic, the Applied Physics Lab instituted a policy requiring employees to be vaccinated against COVID-19. Employees were permitted to request exemption based upon religious or medical reasons. Tarquinio submitted a request for a blanket exemption from the vaccination policy as well as an exemption from any COVID-19 testing. She did not provide any timely necessary medical information, and she refused to sign a medical release form. Consequently, her exemption request was denied, and in December of 2021, she was terminated for failing to abide by APL's vaccination policy.

Tarquinio filed a claim against APL with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and violations of the

ADAAA. (ECF No. 21 ¶ 5.) The EEOC declined to proceed with her claim and issued her a right to sue letter on December 16, 2022 (*Id.*) On October 10, 2023, Tarquinio filed her Amended Complaint against Johns Hopkins University's Applied Physics Lab. (ECF No. 21.) In her Complaint, she brings three counts alleging violations of ADAAA for failure to accommodate, employment discrimination, and prohibited examination and inquiry. APL moved for summary judgment. (ECF No. 25.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, APL's Motion for Summary Judgment (ECF No. 25) is GRANTED, and judgment is entered in its favor.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).[1] Plaintiff Sally Tarquinio was hired as a Systems Engineer at Johns Hopkins University's Applied Physics Lab in September of 2005. (ECF No. 21 ¶ 6.) In 2004, and later again in 2012, she was diagnosed with Lyme Disease, which caused her to suffer from "post-treatment Lyme disease syndrome." (*Id.* ¶ 7.) In response to the COVID-19 pandemic, APL announced a policy on September 24, 2021, which required all employees to provide proof of at least one dose of an approved COVID-19 vaccine by October 15, 2021. (ECF No. 25-1 ¶ 13.) Employees could request an exception from this policy for medical or religious reasons, which

---

[1] A series of "undisputed material facts" presented by the Defendant (ECF No. 25-1) were not challenged by the Plaintiff in the briefs submitted. If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." *Bailey v. Wash. Metro. Area Transit Auth.*, 2011 U.S. Dist. LEXIS 120047, at *4 (D. Md. Oct. 14, 2011) (quoting Fed. R. Civ. P. 56(e)(2)). Accordingly, the material facts presented by Defendant and not challenged by Plaintiff will be treated as undisputed.

2

would need to be approved by APL's Accommodations Coordinator. (*Id.* ¶ 5.) Employees seeking an exception were required to have their request submitted by October 1, 2021. (*Id.* ¶ 6.) If an employee failed to abide by the vaccination policy or have an approved accommodation, their employment would be terminated on October 15, 2021. (*Id.* ¶ 7.) However, employees who timely submitted exception requests were granted temporary accommodations while the Accommodations Coordinator evaluated each request. (*Id.* ¶ 8.) If an employee's request was denied after October 15th, 2021, they had one week to submit proof of a vaccination before their employment would be terminated. (*Id.* ¶ 9.)

Tarquinio filed a Request for Medical Accommodation with the Accommodations Coordinator on October 1, 2021, requesting an exemption from the vaccination requirements as well as COVID testing. (ECF No. 21 ¶ 14.) Tarquinio noted her disability as "immune dysregulation" and "excessive immune activation from the years of chronic Lyme Disease" on her request. (*Id.*) Tarquinio later testified that she requested to be exempt from COVID testing because see did not think testing was reasonable. (ECF No. 25-1 ¶ 19.) The exemption form she submitted was signed by her medical provider, Dr. Mark Schwartz. (ECF No. 21 ¶ 14.) At the time of her request, Tarquinio did not have active Lyme pathogen in her bloodstream. (*Id.*)

On October 11, 2021, APL's Deputy Accommodations Coordinator notified Tarquinio that they had not received the Request for Personal Medical Records form from her and forwarded the link to her. (ECF No. 25-1 ¶ 33.) They also asked Tarquinio to sign a medical release form to "enable APL's medical officer to consult with [Tarquinio's] medical provider on any necessary follow up." (ECF No. 21 ¶ 15.) Tarquinio declined to sign the medical release form. (*Id.*) That same day, the Accommodations Coordinator contacted APL's

3

Medical Director for Occupational Health Dr. Clarence Lam to review Plaintiff's accommodations request. (ECF No. 25-1 ¶ 42.) On October 14, 2021, Dr. Lam notified the Accommodations Coordinator that he did not have enough information to fully consider her request and noted that "Lyme disease is not a medical contraindication to receiving the Covid vaccine. . . . Further explanation as to specifically why her Lyme diagnosis would preclude her from being vaccinated would need to be submitted." (*Id.* ¶ 43.) Tarquinio followed up by reiterating her request for an exemption and her refusal to sign the release form. (*Id.* ¶ 44.)

On October 18, 2021, Dr. Lam informed the Accommodations Team that he would reconsider Tarquinio's request if she could send more recent documentation of her disability signed by her provider. (*Id.* ¶ 45.) That day, the Accommodations Team e-mailed Tarquinio stating "the medical documentation you have submitted is over nine years old. Can you please provide current medical documentation from your medical provider as to whether the previously stated concerns are still ongoing and why the COVID 19 vaccine is contraindicated with respect to your specific medical condition," and gave Tarquinio a deadline of November 15, 2021, to submit this information. (*Id.* ¶ 46.) On November 15, 2021, Tarquinio followed-up by reiterating again her request for exemption and that she would not be signing the release form. (*Id.* ¶ 48.) She included two articles from 2003 and 2005 that she claimed were provided by Dr. Schwartz on Lyme-induced immune dysregulation. (*Id.* ¶¶ 49–50.)

On November 22, 2021, a member of the Accommodations Team interviewed Tarquinio about her request and again told her about their need for medical information that justifies her exemption from the vaccine policy. (*Id.* ¶ 57.) On November 29, 2021, Dr. Lam again reviewed Tarquinio's request including the two articles submitted, he and found that

4

there was still not sufficient documentation to justify her exemption. (*Id.* ¶ 58.) He also reiterated his willingness to speak with her provider to better understand her request. (*Id.* ¶¶ 59–60.) On November 30, 2021, Tarquinio's request was officially declined for failing to provide medical documentation that would explain why a COVID vaccine is contraindicated and refusing to sign the medical release form. (*Id.* ¶ 62.) Tarquinio was informed that she was required to provide proof of her first dose of vaccination by December 7, 2021, or she would be terminated. (*Id.* ¶ 64.)

On December 7, 2021, Tarquinio's supervisor sent a letter notifying her of her termination. (*Id.* ¶ 77.) The letter stated that she was terminated because she was not in compliance with the vaccination policy. (*Id.* ¶ 80.) Tarquinio filed a claim against APL with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and violations of the ADAAA. (ECF No. 21 ¶ 5.) The EEOC declined to process her claim and issued her a right to sue letter on December 16, 2022 (*Id.*) On October 10, 2023, Tarquinio filed her Amended Complaint against Johns Hopkins University's Applied Physics Lab. (ECF No. 21.) In her Amended Complaint, she brings three counts alleging violations of ADAAA for failure to accommodate, employment discrimination, and prohibited examination and inquiry. APL filed a Motion for Summary Judgment on all three counts. (ECF No. 25.) The matter is ripe for review.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact

is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences "in the light most favorable to the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that a trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014).

## ANALYSIS

### I. Count I – Failure to Accommodate

There is no genuine issue of material fact with respect to Defendant's failure to accommodate a disability under the meaning of the ADAAA. To successfully state a claim for Defendant's failure to accommodate, Plaintiff must prove: "(1) that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S.*, LLC, 999 F.3d 954, 959 (4th Cir. 2021). Under the ADA, an employer must "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). The employer must "engage [with their employees] in an interactive process to identify a reasonable accommodation." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015) (alteration in original) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)). This duty arises when an employee communicates that they have a disability and desire an accommodation. *Wilson*, 717 F.3d at 346.

However, both the employer and employee have a duty to participate in the interactive process in good faith; an *employer* may not be held liable for failing to provide a reasonable accommodation where the *employee* refused to engage in or caused the breakdown of the interactive process. *See, e.g.*, *Williams v. Md. Dep't of Health*, 2021 U.S. Dist. LEXIS 244893, at *20 (D. Md. Dec. 22, 2021); *Rowlett v. Balt. City Police Dep't*, 2023 U.S. Dist. LEXIS 53911, at *30 (D. Md. Mar. 28, 2023). This Court has held that during the interactive process, "the employer may require medical documentation that '(1) describes the nature, severity, and

duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed.'" *Rowlett*, 2023 U.S. Dist. LEXIS 53911, at *26 (quoting EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act. Question No. 10 (July 27, 2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html). Moreover, withholding information can be considered to obstruct the interactive process and thus cause the breakdown where the missing information can only be provided by the party who is withholding it. *See Berkner v. Blank*, 2013 U.S. Dist. LEXIS 34320, at *22 (D. Md. Mar. 11, 2013) (citing *Beck v. Univ. of Wi. Bd. of Regents*, 75 F. 3d 1130, 1136 (7th Cir. 1996)).

Here, Plaintiff declined to sign the medical release form that would allow Dr. Lam to make an informed decision about whether her exception should be granted. The Accommodations Team gave Plaintiff ample opportunities to sign the form or provide additional documentation detailing why she needed an exception, and she continuously refused. Defendant attempted in good faith to participate in an interactive process that would allow for both the employer and employee to identify a reasonable accommodation, but Plaintiff refused to participate.

Plaintiff's argument that the only reasonable accommodation possible is a blanket exemption from the Vaccination Policy is unavailing and is another reason her failure to accommodate claim fails. Employers are not obligated to provide employee's their preferred choice of accommodation so long as the provided accommodation is reasonable. *See*

*Wedderburn v. Bd. of Educ.*, 2022 U.S. Dist. LEXIS 29628 at *29 (D. Md. 2022) (citing *Reyazuddin v. Montgomery Cnty.*, 7 F. Supp. 3d 526, 549 (D. Md. 2014)). The only accommodation Plaintiff was willing to accept in this case was a blanket exemption from the vaccine policy. She took it a step further by asking for a blanket exemption from the COVID testing policy as well simply because she believes testing to be unnecessary. Defendant cannot be held liable for denying Plaintiff the only accommodation she was willing to accept. This is especially true considering Plaintiff caused the breakdown in the interactive process. Had Plaintiff filled out the release form or provided timely medical documentation, Dr. Lam would have been able to make an informed decision, which may have been the accommodation that Plaintiff was seeking to begin with. Thus, Defendant cannot be held liable for failure to accommodate, and judgment is entered in its favor as to Count I.

## II.     Count II – Employment Discrimination

There is no genuine dispute of material fact with respect to employment discrimination under the ADAAA. Title I of the ADA prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a claim for disability discrimination under the ADA, Plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *EEOC v. Stowe—Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). Assuming arguendo Plaintiff meets the first two elements, her

claim still fails because she has not demonstrated that Defendant discriminated against her because of her disability.

This Court has found that an employee who was terminated for not abiding by their company's COVID vaccination policy could not state a plausible claim for disability discrimination. *See Jorgenson v. Conduent Transp. Solutions, Inc.*, 2023 U.S. Dist. LEXIS 18463, at *12–13 (D. Md. Feb. 2, 2023). In *Jorgenson*, this Court reasoned that the plaintiff failed to demonstrate a causal link between their alleged disability and their firing, and ultimately found the plaintiff was terminated because of his failure to abide by company policy, and not because of his disability. *Id.* Here, Plaintiff fails to show that she was fired for her alleged disability. Instead, Plaintiff was fired because of her failure and refusal to comply with the company vaccination policy. Therefore, there is no genuine dispute of material fact with respect to Plaintiff's claim for employment discrimination under the ADAAA, and judgment is entered in Defendant's favor as to Count II.

### III.    Count III – Prohibited Examination and Inquiry

Defendant's medical inquiry is permissible and not a violation of the ADAAA because it was "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The ADAAA states that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." *Id.* Determining whether an inquiry is "job-related and consistent with business necessity" is an objective inquiry and is met if "the employer reasonably believes that an employee's medical condition impairs his 'ability to

perform the essential functions of the job' or 'the employee poses a direct threat to himself or others.'" *Coffey v. Norfolk Southern Railroad Co.*, 23 F. 4th 332, 339 (4th Cir. 2022) (quoting *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019)).

Here, Defendant's medical inquiry was clearly job-related as it dealt entirely with Plaintiff requesting a medical accommodation for APL's vaccination policy. Defendant was not making a general inquiry into Plaintiff's health and was only seeking information that would allow them to follow up on the Plaintiff's accommodations request. Had Plaintiff not filed an accommodation, Defendant would not have made a medical inquiry. Furthermore, the medical inquiry was made to determine whether Plaintiff should be exempt from the employer's COVID vaccination policy—a policy put in place to protect the public safety of all employees, including Plaintiff. There is no genuine dispute of material fact with respect to prohibited examination and inquiries, and judgment is entered in Defendant's favor as to Count III.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED** and judgment is entered in its favor.

A separate Order follows.

Dated: April 11, 2024　　　　　　　　　　　　\_\_\_\_/s/_____
　　　　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　　　　United States Senior District Judge